**I.A.M. NATIONAL PENSION FUND,
BENEFIT PLAN A**

v.

**INDUSTRIAL GEAR MANUFACTUR-
ING COMPANY, Appellant.**

No. 82–2486.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 3, 1983.
Decided Dec. 13, 1983.

Alan Shachter, Manassas, Va., for appellant.

Robert T. Osgood, Washington, D.C., for appellee.

Before TAMM and BORK, Circuit Judges, and DAVID W. WILLIAMS,* Senior District Judge for the Central District of California.

TAMM, Circuit Judge:

Appellee, I.A.M. National Pension Fund, Benefit Plan A (Pension Fund or Fund), sought relief in the district court to secure payments owed by appellant, Industrial Gear Manufacturing Co. (Industrial Gear) for the period January 1977 to January 1981. The single issue presented for review is whether a January 1978 consent decree from a suit between the same parties bars a portion of the Fund's claim under the doctrine of res judicata. We agree with United States District Judge Charles R. Richey

---

\* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. Section 1132(a)(3) states that a civil action may be brought:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates

that res judicata does not bar any portion of the Fund's claim. Accordingly, we affirm.

## I. BACKGROUND

The Pension Fund is a collectively bargained labor-management pension trust fund created in 1960 pursuant to the Landrum-Griffin Labor Reform Act, 29 U.S.C. § 186(c)(5) (1976). The Fund maintains an existence wholly separate from both labor and management. Since 1967, Industrial Gear has subscribed to a collective bargaining agreement with District Lodge No. 8 of the International Association of Machinists and Aerospace Workers (the Union) in which Industrial Gear has agreed to pay monthly contributions to the Pension Fund on behalf of employees represented by the Union. The monthly contributions are determined by monthly reports filed by Industrial Gear. The reports show the hours worked and pay received during the preceding month for each employee in the bargaining unit.

To ensure the accuracy of the monthly reports and contributions, the Pension Fund conducts periodic audits of Industrial Gear's payroll records. The Fund conducted one such audit in April 1977 for the period January 1973 to January 1977. The audit revealed that Industrial Gear had failed to make certain required contributions to the Fund.

Consequently, the Fund filed a complaint in the district court in October 1977 seeking relief pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3) (1976).[1] *I.A.M. National Pension Fund v. Industrial Gear Manufacturing Co.,* Civil No. 77–1768 (D.D.C. Oct. 7, 1977) [hereinafter cited as Complaint I]. The complaint alleged that the April 1977 audit revealed Industrial Gear had made

any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ....

insufficient contributions to the Fund. Complaint I at 5. The complaint also alleged that Industrial Gear had failed since April 1977 to make timely reports and payments. *Id.* at 4. The Pension Fund sought equitable relief enjoining Industrial Gear from failing or refusing promptly to submit all reports and contributions owed to the Fund. *Id.* at 6.

The cause of action was settled in January 1978 by a consent decree in which the parties indicated that they wished to resolve the issues raised in the complaint without further litigation. *I.A.M. National Pension Fund v. Industrial Gear Manufacturing Co.,* Civil No. 77–1768 (D.D.C. Jan. 20, 1978) [hereinafter cited as Consent Decree]. The consent decree was entered by the court without any findings of fact or conclusions of law. Consent Decree at 2. Pursuant to the decree, Industrial Gear was required to pay the Fund $4,794.92 shown by the April 1977 audit to be due. *Id.* Additionally, Industrial Gear was required to submit reports and contributions to the Fund for the months of October, November, and December 1977, as well as $300 remaining due on the September 1977 contribution. *Id.* The court retained jurisdiction of the action until October 31, 1978, during which time Industrial Gear was enjoined from failing to comply with the terms of the decree and from failing to make any report or payment to the Fund required by the collective bargaining agreement. *Id.* at 4.

In November 1981, the Fund conducted another audit of Industrial Gear's payroll records. The audit, covering the period January 1977 to January 1981, revealed that Industrial Gear again had failed to make certain required contributions to the Fund. In July 1982, the Fund filed the complaint in the instant action against Industrial Gear seeking relief pursuant to ERISA, 29 U.S.C. § 1132(a)(3) (1976). *I.A.M. National Pension Fund, Benefit Plan A v. Industrial Gear Manufacturing Co.,* Civil No. 82–2133 (D.D.C. July 30, 1982) [hereinafter cited as Complaint II]. The complaint alleged that Industrial Gear owed the Fund $92,623.84, as revealed by the November 1981 audit which covered the period January 1977 to January 1981. Complaint II at 4–5. The Fund sought a court order enjoining Industrial Gear from failing or refusing promptly to submit all reports and contributions owed to the Fund. *Id.* at 6.

At trial, Industrial Gear admitted that it owed, in substantial part, the amount claimed due by the Pension Fund. Trial transcript at 30. Industrial Gear argued, however, that the Pension Fund is barred by res judicata from now raising issues that should have been raised either in the 1977 action or during the period that the court retained jurisdiction of the 1977 action. Specifically, Industrial Gear contended that the Pension Fund is barred from seeking contributions of $44,266.40 for the period January 1977 through October 1978.

The district court rejected Industrial Gear's contention. The court found that the instant cause of action differed from the 1977 cause of action. *I.A.M. National Pension Fund, Benefit Plan A v. Industrial Gear Manufacturing Co.,* Civil No. 82–2133 (D.D.C. Dec. 15, 1982) (Findings of Fact and Conclusions of Law). Accordingly, res judicata did not bar any portion of the Pension Fund's claim. Similarly, the court found that the Fund was not collaterally estopped from making any portion of the instant claim. *Id.* The Pension Fund was entitled to recover the entire amount of underreported and underpaid contributions for the audited period January 1977 to January 1981. *Id.* This appeal followed.

## II. ANALYSIS

■ The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues. The doctrine usually is parsed into claim preclusion and issue preclusion. Restatement (Second) of Judgments, ch. 3, Introductory Note (1982). Under the claim preclusion aspect of res judicata, a final judgment on the merits in a prior suit involving the same parties or their privies bars subsequent

suits based on the same cause of action.[2] *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Under the issue preclusion aspect of res judicata, a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action.[3] *Id.*

■ Consent decrees generally are treated as final judgments on the merits and accorded res judicata effect.[4] *See, e.g., United States v. Southern Ute Indians,* 402 U.S. 159, 91 S.Ct. 1336, 28 L.Ed.2d 695 (1971); *United States v. International Building Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953); 1B J. Moore, Moore's Federal Practice ¶ 0.409[5] (2d ed. 1983). Application of res judicata to consent decrees has the salutory effects of (1) making efficient use of judicial energy devoted to individual cases, (2) establishing certainty and respect for court judgments, and (3) protecting the party relying on the prior adjudication from vexatious litigation. *See Semler v. Psychiatric Institute of Washington, D.C.,* 575 F.2d 922, 927 (D.C.Cir. 1978).

On appeal, Industrial Gear argues that the Pension Fund is barred by res judicata from seeking contributions for the period January 1977 through October 1978. In making this argument, Industrial Gear seems to use the term res judicata broadly to include both claim preclusion and issue preclusion. Industrial Gear contends that this cause of action is identical to the Fund's 1977 cause of action, and therefore the claim preclusive effect of the consent decree bars a portion of the Fund's instant claim. Alternatively, Industrial Gear contends that if the causes of action are not identical, then the issue preclusive effect of the consent decree bars the Fund from relitigating the issue of contributions for the period January 1977 through October 1978. We reject each of these contentions and now address each separately.

## A. *Claim Preclusion*

■ In determining whether the Fund is barred by the claim preclusion aspect of res judicata, the issue before us is whether the Fund currently is suing upon the same cause of action as that upon which it sued in 1977. *See Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). Industrial Gear argues that the two actions are identical because both include the issue of contributions to be paid for the period January 1977 through October 1978. The Fund, on the other hand, states that the two actions are different because the 1977 claim involved the *delinquency* of reports and payments for the period in question, while the instant claim involves the *accuracy* of those reports and payments.

Authorities do not provide a uniform definition for the term "cause of action" in connection with the application of res judicata. The term has been given varied treatment depending largely on the facts in each case. *Nash County Board of Educa-*

---

**2.** Where the final judgment is rendered in favor of plaintiff, the cause of action *merges* into the judgment, and plaintiff may not thereafter maintain another suit on the same cause of action. Where the final judgment is rendered in favor of defendant, plaintiff is *barred* from suing defendant on the same cause of action. These principles of "merger" and "bar" constitute the claim preclusion aspect of res judicata. *Semler v. Psychiatric Institute of Washington, D.C.,* 575 F.2d 922, 927 (D.C.Cir.1978); RESTATEMENT (SECOND) OF JUDGMENTS §§ 18, 19 (1982).

**3.** The issue preclusion aspect of res judicata consists of collateral estoppel and direct estoppel. Where a subsequent action is brought on a different claim, the party is collaterally estopped from relitigating issues actually litigated and determined in the prior action. RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment b (1982). If, as less frequently occurs, a judgment does not preclude relitigation of all or part of the claim on which the action was brought, the party nevertheless is directly estopped from relitigating issues actually litigated and determined in the prior action. *Id.*

**4.** The preclusive effect of a consent decree will be limited, however, if the court did not make determinations of fact and conclusions of law. *See Tutt v. Doby,* 459 F.2d 1195, 1199 (D.C.Cir. 1972); *infra* § II.B.

*tion v. Biltmore Co.,* 640 F.2d 484, 487 (4th Cir.1981). In some instances, the court in determining the identity of two causes of action will examine whether the facts in the two cases are the same. *Id.* at 487–88 & n. 7. In other instances, the court will examine whether the primary right asserted in the two cases is the same. *.Id.* at 488 & n. 8. Regardless which test is applied, we find that the 1977 cause of action differs from the instant cause of action.

We note again that the Pension Fund is separate and distinct from both Industrial Gear and the Union. It therefore has no independent knowledge with which to verify the information in Industrial Gear's monthly reports. To ensure the accuracy of those reports and the consequent accuracy of the monthly contributions, the Fund maintains a program of periodic audits of Industrial Gear's payroll records. Before the Fund can maintain a cause of action alleging inaccurate contributions, it must conduct an audit from which it determines that the monthly reports are inaccurate.

The 1977 action arose as a result of one such audit conducted in April 1977. This audit covered the period January 1973 to January 1977 and revealed that Industrial Gear had made inaccurate contributions to the Fund. In its 1977 complaint, the Fund sought proper contributions for the audited period. Complaint I at 5. Additionally, because Industrial Gear had been delinquent since April 1977 in submitting reports and contributions, the Fund also sought to compel Industrial Gear to make timely reports and contributions. *Id.* at 4.

The consent decree, entered without findings of fact or conclusions of law, purported to "resolve the issues raised in the complaint without further litigation ...." Consent Decree at 2. To that end, the decree compelled Industrial Gear to pay the Fund the amount shown by the audit to be due. *Id.* The decree also compelled Industrial Gear to submit outstanding reports and contributions for October through December 1977, and it provided for the payment of a delinquent sum remaining due on the September 1977 contribution. *Id.* The court retained jurisdiction through October

1978 to ensure Industrial Gear complied with the terms of the decree. *Id.* at 4.

By contrast, the instant action arose from a November 1981 audit that covered a time period different from that covered by the 1977 audit. The 1981 audit revealed that from January 1977 to January 1981 Industrial Gear again had made inaccurate payments to the Fund. Thus, the instant action involved a claim for *inaccurate* payments after January 1977, whereas the 1977 action included a claim for the *delinquent* submission of reports and payments after January 1977.

Industrial Gear argues that the causes of action are identical because both allege, *inter alia,* that Industrial Gear failed in its obligation to make proper payments from January 1977 through October 1978, as evidenced by the provision in the consent decree compelling Industrial Gear to pay $300 outstanding on its September 1977 contribution and to submit reports and payments for October, November, and December 1977. Consent Decree at 2. We believe, however, that Industrial Gear's attempt to define the 1977 cause of action by relying on isolated provisions of the consent decree is inappropriate. "[T]he effort to find answers in a decision that has been made requires an analysis of the intention of the decision." *Texaco, Inc. v. Hickel,* 437 F.2d 636, 646 (D.C.Cir.1970). Thus, to define the 1977 cause of action, the relief provided in the consent decree must be analyzed in light of the injuries alleged and rights asserted. The Fund has distinct rights to have its reports and contributions submitted both promptly and accurately. The 1977 cause of action involved two separate claims asserting those rights. One claim alleged the inaccuracy of contributions for the audited period January 1973 to January 1977. The consent decree is res judicata for the audited period. *See United States v. International Building Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953). The other claim in the 1977 action alleged the delinquency since April 1977 of Industrial Gear's reports and payments. On the other hand, the instant suit alleges the inaccuracy of contributions for the audited period January 1977 to January 1981. Although the

time period for which the Fund alleges injury overlaps in the two suits, the two causes of action differ in that each asserts different rights, alleges different injuries, and arises from different facts.[5]

The provisions in the consent decree compelling Industrial Gear to pay money remaining due on the September 1977 contribution and to submit reports and payments for October through December 1977 merely testify to Industrial Gear's *delinquency* in submitting reports and contributions. The Fund in 1977 did not raise the issue of the *accuracy* of reports and contributions submitted after January 1977. Indeed, not having audited the period after January 1977, the Fund had no knowledge of Industrial Gear's inaccurate payments for that period. Because the instant cause of action is different from that brought in 1977, the Fund is not barred by claim preclusion from seeking relief.[6]

### B. *Issue Preclusion*

▪ Whereas claim preclusion forecloses all that which might have been litigated previously, issue preclusion treats as final only those questions actually and necessarily decided in the prior suit. *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). In *Tutt*

*v. Doby,* 459 F.2d 1195 (D.C.Cir.1972), this court noted that the Supreme Court has limited the collateral estoppel effect of consent decrees: "[T]he spirit of justice requires the doctrine [of collateral estoppel] to be limited to cases where there was 'an adjudication on the merits,' and that the doctrine should apply only as to 'issues actually litigated and determined in the prior suit.'" *Id.* at 1199 (citations omitted).

▪ Industrial Gear argues that the consent decree, entered in January 1978 and which conferred upon the court continued jurisdiction through October 1978, resolves with finality all issues of underpayment through October 1978. To the contrary, the preclusive effect of the decree attaches only to issues actually litigated and determined in the consent decree, not to what might have been litigated and determined. *Cromwell v. County of Sac,* 94 U.S. 351, 353, 94 Otto 351, 353, 24 L.Ed. 195 (1876). Because the Fund, when the consent decree was entered, had audited Industrial Gear's payroll records only up to January 1977, it did not and could not have raised the issue of inaccurate payments beyond January 1977.[7] We will not allow the consent decree to forever foreclose inquiry into the merits of this issue. Therefore, the Fund is not barred by issue preclusion in this action.

---

**5.** In determining whether different facts will give rise to a different cause of action, we consider, among other things, "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." 1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.410[1] (2d ed. 1983). Here, the Fund adhered to a program of periodically auditing Industrial Gear's payroll records to verify the accuracy of the monthly reports and payments. Absent such an audit, the Fund could not maintain an action for inaccurate payments.

**6.** We also attach significance to Industrial Gear's failure to comply with the terms of the consent decree. The decree enjoined Industrial Gear until October 31, 1978 from

failing or refusing to make any report or payment to the Pension Fund which it is obligated by collective bargaining agreement to make .... If at any time during the life of this decree [Industrial Gear] fails or refuses to make any payment due and owing from

it to the Fund ..., [the Fund may] apply to the Court for an order compelling the immediate payment of such sum ....

Consent Decree at 4. We observe that the Fund probably is entitled to enforce the terms of the 1978 consent decree. *See Davis v. Prudential Insurance Company of America,* 331 F.2d 346, 350 (5th Cir.1964) ("Injunctions may be enforced by contempt proceedings, damage actions, or actions to enforce a penalty included within the injunctive order ...."). We do not pass judgment on this issue, however, because we hold that the instant cause of action differs from the 1977 cause of action.

**7.** The instant decree was not accompanied by a judicial determination of questions of fact or conclusions of law. As in *United States v. International Building Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953), this decree appears to be nothing more than a *pro forma* acceptance by the court of an agreement by the parties to settle their controversy:

There is no showing either in the record or by extrinsic evidence that the issues raised by

### III. Conclusion

The doctrine of res judicata serves vital interests in the administration of justice. *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981). The important policy of avoiding repetitious litigation involving the same causes of action or the same issues requires that courts not be penurious in giving full effect to res judicata. *Texaco, Inc. v. Hickel,* 437 F.2d 636, 646 (D.C.Cir. 1970). Nevertheless, after examining the 1977 complaint, the 1978 consent decree, and the instant complaint, we find that the two causes of action differ and that the Fund is not precluded from litigating the issues raised in the instant action. Accordingly, we affirm the district court's decision that res judicata does not bar the Fund's claim.

*Affirmed.*

the pleadings were submitted to the [court] for determination or determined by that court.... As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration.... [U]nless we can say that [the prior judgment was] an adjudi-cation of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits. *Id.* at 505–06, 73 S.Ct. at 808–09 (citations omitted).