**Michael R. WARD, Plaintiff,**

v.

**William E. KENNARD, Chairman, Federal Communications Commission, Defendant.**

**No. CIV.A.00–0419(RMU).**

United States District Court, District of Columbia.

Dec. 12, 2000.

Order Denying Reconsideration Jan. 24, 2001.

Michael R. Ward, Oxon Hill, MD, pro se.

Scott Harris, Assist. U.S. Atty., Washington, DC, for defendant.

### *MEMORANDUM OPINION*

URBINA, District Judge.

**Granting the Defendant's Motion for Summary Judgment; Denying the Plaintiff's Motion for Partial Summary Judgment**

#### I.  INTRODUCTION

Arriving at the courthouse steps on the parties' cross-motions for summary judg-

ment, this dispute involves the plaintiff's allegations that the defendant violated his due process and equal rights, discriminated against him on the basis of his age, sex, and disability, violated merit-system principles, and committed prohibited personnel practices. Specifically, the plaintiff, Michael R. Ward ("the plaintiff" or "Mr. Ward"), brings this 48–count action against the defendant William E. Kennard ("the defendant") in his official capacity as Chairman of the Federal Communications Commission ("FCC"), challenging the defendant's decision to deny the plaintiff's application for a writer-editor position. For the reasons that follow, the court will grant the defendant's motion for summary judgment and will deny the plaintiff's motion for partial summary judgment.

## II. BACKGROUND

*Pro se* plaintiff Michael R. Ward "had worked as a writer-editor and at the GS–12 level for several years." Compl. at 2.[1] In his complaint, Mr. Ward asserts that he had "competitive civil service status" and that he was "a preference eligible candidate, a 10–point compensably [sic] disabled veteran with a service-connected disability rated at 30 percent or more by the Department of Veterans Affairs." *Id.*

From July 11, 1994 through August 12, 1994, the FCC posted Vacancy Announcement Number ("VAN") 94–128, which sought applications from "all sources" to fill the position of writer-editor, grade GS–13, in its Office of Public Affairs ("OPA"). *See* Mot. for Summ. J. at 3. Mr. Ward applied for the job, but the FCC did not select him for the position. *See* Compl. at 2.

Mr. Ward alleges that the FCC's rejection of his application violated his constitutional right to due process and amounted

to employment discrimination on the basis of his sex, age, and disability. In addition, he claims that, by denying his application, the FCC violated the merit-system principles embodied in 5 U.S.C. § 2301, and committed personnel practices prohibited by 5 U.S.C. § 2302. *See generally* Compl. Mr. Ward brings his claims under the Fifth and Fourteenth Amendments to the Constitution, 5 U.S.C. §§ 1302, 2108, 2301, 2302, 3309, 3313, 3314, 3317, and 1318, the Rehabilitation Act of 1973 (§ 501, 29 U.S.C. § 791), the Age Discrimination in Employment Act of 1967 ("ADEA") (29 U.S.C. § 633(a)), 38 U.S.C. § 4214, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and 42 U.S.C. § 1981(a). *See* Compl. at 2–15.

Mr. Ward charges that because he had competitive civil service status, was preference eligible, and had a disability rated at more than 30 percent, the FCC's selection of another person for the writer-editor position violated both merit-system principles and government personnel practices. Specifically, the plaintiff alleges that the FCC failed to follow proper selection procedures in assessing applicants, intentionally excluded his application from consideration, and manipulated the selection process to appoint the applicant of its choice. *See generally* Compl. Moreover, Mr. Ward asserts that the defendant committed all these acts with the intent to discriminate against him on the basis of his age, sex, and disability. *See id.*

Both the plaintiff and the defendant have filed motions for summary judgment, followed by corresponding oppositions and replies. For the reasons that follow, the court will grant the defendant's motion for summary judgment and will deny the plaintiff's motion for partial summary judgment.

---

1. Since the complaint provides only a brief statement of facts, the court cannot ascertain several details. For example, although the plaintiff says that he worked for several years at the GS–12 level, he does not say where he worked. Exhibit 2 of the plaintiff's motion for partial summary judgment is a "Notifica-tion of Personnel Action," which seems to indicate (although the print is rather faint) that the plaintiff resigned from his GS–12 level job as a Public Affairs Specialist for the Department of the Navy in 1991 for "personal" reasons.

## III.  DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate when a court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The substantive law on which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears on an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus that might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the non-moving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the non-moving party as true and must draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the non-moving party to establish "the mere existence of a scintilla of evidence in support of the [non-moving party's] position . . .; there must be evidence on which the jury could reasonably find for the [non-moving party]." *See id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *See id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B.  Analysis

#### 1.  The Plaintiff's Non–Title VII and Non–ADEA Claims of Discrimination

The defendant argues that the court should dismiss many of the complaint's 48 counts because the plaintiff is essentially asserting Title VII and ADEA discrimination claims under alternative and impermissible statutes, or as constitutional claims. *See* Mot. for Summ. J. at 10–11. Specifically, the defendant asserts that because the Supreme Court has ruled that Title VII is the exclusive remedy for claims of sex and race discrimination in federal employment, the plaintiff may not allege sex discrimination by the defendant under any alternative statute. *See Brown v. General Serv. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The Court's holding in *Brown* is clear and well-settled, and the D.C. Circuit has applied it on numerous occasions. *See, e.g., Ramey v. Bowsher*, 915 F.2d 731, 734 (D.C.Cir. 1990); *Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1414–15 (D.C.Cir.1985) ("Allowing federal employees to recast their Title VII claims as constitutional claims would clearly threaten" the policies underpinning the rigorous administrative exhaustion requirements and time limitations of Title VII.). The same principle applies to claims of discrimination based on age or disability—the ADEA and the Rehabilitation Act, respectively, are the exclusive remedies for such claims. *See Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C.Cir.1991); *Rattner v. Bennett*, 701 F.Supp. 7, 9 (D.D.C.1988).

Moreover, after considering the defendant's argument, the plaintiff himself concedes these points while arguing that his *other* counts should survive the defendant's motion for summary judgment: "As it relates to this complaint, Title VII is the exclusive remedy for employment discrimination cases based on sex (Complaint counts 17, 19–27); the ADEA is the exclusive remedy for employment discrimination cases based on age (Complaint counts

28–38) *neither precludes plaintiff's other actions.*" Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 3 (emphasis added).

Indeed, a substantial number of the counts in the plaintiff's complaint are discrimination claims asserted under statutes other than Title VII or the ADEA. Count 18 is a claim of sex discrimination asserted under 42 U.S.C. § 1981(a). *See* Compl. at 8. Counts 19 through 24 are claims of sex discrimination asserted under 5 U.S.C. §§ 1302, 3309, 3313, 3314, 3317 and 3318. *See id.* at 8–9. Count 25 is a claim of sex discrimination asserted under 38 U.S.C. § 4214. *See id.* at 9. Counts 26 and 27 are claims of sex discrimination, but lack any statutory reference. *See id.* Accordingly, because the plaintiff fails to assert these sex-discrimination claims under Title VII, the court will dismiss counts 18–27.

The same reasoning applies to the age-discrimination claims asserted under statutes other than the ADEA. Count 29 is an age-discrimination claim asserted under 42 U.S.C. § 1981(a). *See* Compl. at 10. Counts 30 through 35 are age-discrimination claims asserted under 5 U.S.C. §§ 1302, 3309, 3313, 3314, 3317 and 3318. *See id.* at 10–11. Count 36 is an age-discrimination claim asserted under 38 U.S.C. § 4214. *See id.* at 11–12. Counts 37 and 38 are age-discrimination claims that lack any statutory reference. *See id.* at 12. Accordingly, because the plaintiff fails to assert these age-discrimination claims under the ADEA, the court will dismiss counts 29–38.

### 2. The Plaintiff's Title VII and ADEA Counts

The plaintiff's complaint does assert one count of sex discrimination under Title VII (count 17) and one count of age discrimination under the ADEA (count 28). *See* Compl. at 7, 10. In assessing claims of employment discrimination, a court must follow the burden-shifting scheme laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, the initial burden lies with the plaintiff to establish a prima-facie case of discrimination. Once the plaintiff has established the prima-facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Once the employer articulates its non-discriminatory reason, the burden then shifts back to the plaintiff, who must show that the employer's alleged non-discriminatory reason is merely a pretext for unlawful discrimination. *See id.* at 802–804, 93 S.Ct. 1817.

In this case, the plaintiff established prima-facie cases of sex and age discrimination: 1) he applied for a position, 2) he was qualified, 3) he was in the protected classes (male, 53 years of age), 4) he was not selected for the position, and 5) an applicant not in the protected classes (a female under age 40) was selected for the position. The defendant then satisfied its burden of articulating a legitimate, non-discriminatory reason for not selecting the plaintiff by asserting that it chose to utilize the Merit Promotion Candidates list rather than the Non-status Candidates list or the Non-competitive Candidates List, as allowed under 5 C.F.R. § 335.103(b)(4). *See* Mot. for Summ. J. at 18. The Merit Promotion Candidates list contained only applicants whom the FCC had rated "best qualified," and did not include the plaintiff, because the FCC had rated him only "highly qualified." *See id.*

■ Once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of

the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment). *See Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C.Cir.1998). The plaintiff fails to satisfy this burden. By reiterating his bare assertions of discrimination and alleging that the FCC did not fully recognize his veteran status, the plaintiff presents no evidence that the defendant's legitimate, non-discriminatory reasons were pretextual. The plaintiff's veteran-preference argument is not relevant to his employment-discrimination rebuttal that he must make under the *McDonnell Douglas* framework, but rather may be relevant to his veteran-preference argument involving his Civil Service Reform Act claims (which the court will address below in Section 4). *See* Mot. for Summ. J. at 18–19. Moreover, as the defendant notes, "Plaintiff provides no evidence whatsoever calling into question the decision to rate him only 'highly qualified'" rather than "best qualified." *See* Def.'s Reply at 2. The court agrees, and concludes that the plaintiff has presented no evidence that would allow a jury to infer discrimination. Accordingly, the Title VII and ADEA claims (counts 17 and 28) cannot survive summary judgment.

### 3. The Plaintiff's Constitutional Claims

The plaintiff seeks only money damages, not injunctive relief, for his constitutional claims. *See* Mot. for Summ. J. at 12. The defendant argues that the court should dismiss these claims in light of the holding in *Clark v. Library of Congress,* 750 F.2d 89 (D.C.Cir.1984). In that case, the D.C. Circuit recognized the well-established rule that sovereign immunity bars suits for money damages against officials in their official capacity, absent a specific waiver by the government. *See id.* at 103; Mot for Summ. J. at 12. The *Clark* court also

recognized the exception to the rule, namely that the doctrine of sovereign immunity does not bar claims for nonmonetary relief against government agencies and officials when the plaintiff alleges unconstitutional action by the defendant agency or official. *See Clark,* 750 F.2d at 102.

■ In this case, the plaintiff cannot take refuge in the rule's exception. The plaintiff seeks money damages for his Fifth and Fourteenth Amendment claims. *See* Compl. at 16. In the section of the complaint that relates to damages sought for alleged constitutional violations, the plaintiff states that he "seeks declaratory, injunctive, and make-whole relief; compensatory damages assessed at $300,000 and punitive damages to be determined by a jury." *See id.* Despite the presence of the word "injunctive" in that section of the complaint, the court holds that the complaint insufficiently pleads a request for injunctive relief, since it does not specify the form of injunctive or specific relief sought. Thus, the complaint fails to satisfy the specificity requirements of Federal Rule of Civil Procedure 8(a), which requires the complaint to contain, *inter alia,* "a demand for judgment for the relief the pleader seeks." *See* FED. R. CIV. P. 8(a).[2] Accordingly, the court will dismiss the portion of the complaint—counts 2, 4, 6, 8, 10, 12, 14 and 16—that alleges violations of the plaintiff's Fifth and Fourteenth Amendment rights.

### 4. The Plaintiff's Claims Under the Civil Service Reform Act

A significant portion of the plaintiff's claims fall under 5 U.S.C. §§ 2301–2302 and various other sections of Title 5 of the United States Code, known as the Civil Service Reform Act of 1978 ("CSRA"). In these counts (1, 3, 5, 7, 9, 11 and 39–48), the plaintiff alleges that the defendant violated merit-system principles and committed prohibited personnel practices. The defendant argues that these claims should

---

**2.** Moreover, the plaintiff has not proffered any evidence of the FCC's alleged constitutional violations that would survive summary judgment.

be dismissed because the court lacks ·sub-ject-matter jurisdiction to hear them. *See* Mot. for Summ. J. at 14. The CSRA provides that a party who asserts a CSRA claim must first pursue it with the Office of Special Counsel, then with the Merit Systems Protection Board ("MSPB"), and finally, on appeal, with the U.S. Court of Appeals for the Federal Circuit. *See* 5 U.S.C. §§ 1214, 7703. In his dissent in *United States v. Fausto,* Justice Stevens stated that because the Federal Circuit's jurisdiction is restricted to a narrowly de-fined range of subject matter, it "brings to the cases before it an unusual expertise that should not lightly be disregarded . . . . [T]he Federal Circuit is the only Court of Appeals with jurisdiction to review an ap-peal from the Merit Systems Protection Board . . . ." *See United States v. Fausto,* 484 U.S. 439, 464, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (Stevens, J., dissenting o.g.).

In this case, the plaintiff went to the MSPB with his CSRA-related claims, and the MSPB rejected the plaintiff's claims. *See* Mot. for Summ. J. at 7. The plaintiff then appealed the MSPB decision to the Court of Appeals, which affirmed the dis-missal. *See id.* at 7.

▇▇▇ Although the plaintiff's argument on these points is unclear, his claims would not succeed under any interpretation. For example, if the plaintiff means to assert CSRA claims here that were not raised before the MSPB, then the court would dismiss the plaintiff's instant CSRA claims for failure to exhaust administrative reme-dies. Alternatively, if the plaintiff is ask-ing this court to review the CSRA claims that the MSPB dismissed and that the Court of Appeals affirmed, then the court would dismiss the instant CSRA claims since the Federal Circuit, which possesses

unique expertise in CSRA claims and MSPB appeals, is the court of final appeal regarding MSPB decisions. Finally, if the plaintiff is not seeking review of the Court of Appeals' decision, but rather is attempt-ing to re-litigate his CSRA claims in this court, then the doctrine of *res judicata* would preclude his efforts. A claim is barred by res judicata when there has already been a final judgment on the mer-its in a prior suit involving the same par-ties and the same cause of action. *See I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 946–47 (D.C.Cir. 1983). The doctrine applies to all of the parties' rights regarding matters that could have been litigated as well as those matters that were actually litigated. *See id.* at 947. For all of these reasons, the court will dismiss the plaintiff's CSRA claims (counts 1, 3, 5, 7, 9, 11 and 39–48).

### 5. Counts 13 and 15

▇▇▇ Lastly, the plaintiff appears to as-sert claims of disability discrimination in counts 13 and 15 of the complaint. In count 13, he cites the Rehabilitation Act of 1973, and in count 15, he asserts disability discrimination in sum and substance. *See* Compl. at 6–7. As discussed above, the Rehabilitation Act is the only avenue of redress for a federal employee's claims of discrimination based on disability. The plaintiff, however, has failed to set forth a prima-facie case of discrimination based on disability in any of his pleadings or sub-missions.[3] Moreover, he has failed to demonstrate any evidence that would sup-port or tend to support such a claim. Al-ternatively, the plaintiff may have intended to allege in these counts that the defen-dant did not give full accord to the plain-tiff's veteran status. Such an argument, though, would relate to the plaintiff's

---

**3.** As the defendant notes, if the plaintiff in-tended to raise a separate claim under the Rehabilitation Act, this claim would be barred since the plaintiff failed to exhaust his admin-istrative remedies because he never raised the claim during the administrative process. *See Williamson v. Shalala,* 992 F.Supp. 454, 457

(D.D.C.1998); Mot. for Summ. J. at 11. The plaintiff never responds to this argument in the relevant section of his opposition to the motion for summary judgment. *See* Pl.'s Opp'n at 10. The court may treat the plain-tiff's failure to respond as a concession on this point. *See* Local Civil Rule 7.1(b).

CSRA claims (discussed above in Section 4), over which this court lacks subject-matter jurisdiction. If the plaintiff meant to assert a claim other than discrimination or a prohibited personnel practice relating to veteran-preference, then the plaintiff has failed to meet the specificity requirements of Federal Rule of Civil Procedure 8(a). *See* FED. R. CIV. P. 8(a); *Wolfgram v. El Dorado County*, 934 F.2d 325, 1991 WL 92339 (9th Cir.1991). Accordingly, the court will dismiss counts 13 and 15 of the complaint.

## IV. CONCLUSION

For all of these reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for partial summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of December, 2000.

### *MEMORANDUM OPINION*

### DENYING THE PLAINTIFF'S MOTION FOR RECON-SIDERATION

### I. INTRODUCTION

This matter comes before the court on the plaintiff's motion for reconsideration of this court's December 12, 2000 Memorandum Opinion ("Memorandum Opinion"), which granted the defendant's motion for summary judgment. The *pro se* plaintiff, Michael R. Ward ("the plaintiff" or "Mr. Ward"), brought this suit claiming numerous civil rights violations by the defendant, William E. Kennard ("the defendant"), Chairman of the United States Federal Communications Commission, named in his official capacity. The plaintiff now asks

the court to reconsider its Memorandum Opinion. For the reasons that follow, the court will deny the plaintiff's motion.

### II. BACKGROUND

*Pro se* plaintiff Michael R. Ward "had worked as a writer-editor and at the GS–12 level for several years." Compl. at 2.[1] In his complaint, Mr. Ward asserted that he had "competitive civil service status" and that he was "a preference eligible candidate, a 10–point compensably [sic] disabled veteran with a service-connected disability rated at 30 percent or more by the Department of Veterans Affairs." *Id.*

From July 11, 1994 through August 12, 1994, the FCC posted Vacancy Announcement Number ("VAN") 94–128, seeking applications from "all sources" to fill the position of writer-editor, grade GS–13, in its Office of Public Affairs ("OPA"). *See* Def.'s Mot. for Summ. J. at 3. Mr. Ward applied for the job, but the FCC did not select him for the position. *See* Compl. at 2.

Mr. Ward alleged that the FCC's rejection of his application violated his constitutional right to due process and amounted to employment discrimination on the basis of his sex, age, and disability. In addition, he claimed that by denying his application, the FCC violated the merit-system principles embodied in 5 U.S.C. § 2301, and committed personnel practices prohibited by 5 U.S.C. § 2302. *See generally* Compl. Mr. Ward brought his claims under the Fifth and Fourteenth Amendments to the Constitution, 5 U.S.C. §§ 1302, 2108, 2301, 2302, 3309, 3313, 3314, 3317, and 1318, the Rehabilitation Act of 1973 (§ 501, 29 U.S.C. § 791), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 633(a)) ("ADEA"), Title 38 U.S.C.

1. Since the complaint provided only a brief statement of facts, the court could not ascertain several details. For example, although the plaintiff said that he worked for several years at the GS–12 level, he did not say where he worked. Exhibit 2 of the plaintiff's motion for partial summary judgment is a "Notification of Personnel Action," which seems to indicate (although the print is rather faint) that the plaintiff resigned from his GS–12 level job as a Public Affairs Specialist for the Department of the Navy in 1991 for "personal" reasons.

§ 4214, Title 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and 42 U.S.C. § 1981(a). *See* Compl. at 2–15.

Mr. Ward charged that because he had competitive civil service status, was preference eligible and had a disability rated at more than 30 percent, the FCC's selection of another person for the writer-editor position violated both merit-system principles and government personnel practices. Specifically, the plaintiff alleged that the FCC failed to follow proper selection procedures in assessing applicants, intentionally excluded his application from consideration, and manipulated the selection process to select the applicant of its choice. *See generally* Compl. Moreover, Mr. Ward asserted that the defendant had committed all these acts with the intent to discriminate against him on the basis of his age, sex, and disability. *See id.*

As noted above, on December 12, 2000, the court granted the defendant's motion for summary judgment and denied the plaintiff's motion for partial summary judgment. The plaintiff now asks the court to reconsider that decision.

## III. DISCUSSION

### A. The Plaintiff's Motion for Reconsideration Does Not Constitute a Legitimate Rule 60(b) Motion

The plaintiff brings this motion for reconsideration without explicitly stating which Federal Rule of Civil Procedure he

seeks to employ. In short, he fails to make clear whether he intended to file a Rule 59(e) motion [2] or a Rule 60(b) motion.[3] The Federal Rules of Civil Procedure help answer this question. Since the plaintiff filed his motion for reconsideration more than 10 days after the court issued its December 12, 2000 Memorandum Opinion [4], Federal Rule of Civil Procedure 6(b) does not allow the court to treat the motion as a Rule 59(e) motion. *See* FED. R. CIV. P. 6(b) (the court "may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b)...."). Accordingly, since the court cannot construe the plaintiff's motion as a Rule 59(e) motion, the court will construe it as a Rule 60(b) motion for reconsideration.

In his motion, the plaintiff does not raise allegations of fraud, inadvertence, excusable neglect, newly discovered evidence, surprise, or misconduct that would qualify his motion as a legitimate Rule 60(b) motion. *See* FED. R. CIV. P. 60(b). After reviewing the motion, the court can only presume that the plaintiff intends to assert that the court made various errors in its legal reasoning in formulating its Memorandum Opinion. For example, the plaintiff's motion states, "the Court misconstrues and contorts the substance of the plaintiff's sex and age discrimination claims to his detriment...." Mot. for Recon. at 1–2.

---

**2.** Federal Rule of Civil Procedure 59(e), entitled "Motion to Alter or Amend Judgment," provides that: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

**3.** Federal Rule of Civil Procedure 60(b), entitled "Relief from Judgment or Order: Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.," provides, in pertinent part, that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a relief judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise,

or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it has been based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

**4.** The plaintiff filed his motion for reconsideration on January 9, 2001.

The federal courts of appeal are split over whether parties can use Rule 60(b) motions to assert that the court made an error of legal reasoning. A majority of the circuits that have addressed the question state that parties cannot do so. For example, the First, Third, Fourth, Seventh, and Eighth Circuits oppose allowing parties to use Rule 60(b) motions "to correct legal errors." *See, e.g., Elias v. Ford Motor Co.,* 734 F.2d 463, 467 (1st Cir.1984) (Rule 60(b) cannot alone fix errors of law); *Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988) (Rule 60(b) cannot be used when a motion solely alleges legal error and reiterates the original claims); *McKnight v. U.S. Steel Corp.,* 726 F.2d 333 (7th Cir. 1984) (Rule 60(b)'s purpose was not to correct legal errors); *Spinar v. South Dakota Board of Regents,* 796 F.2d 1060, 1062 (8th Cir.1986) ("This court has maintained consistently that 'Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment.'" (quoting *Hartman v. Lauchli,* 304 F.2d 431, 432 (8th Cir.1962))). The Fourth Circuit has held that "Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue.... Where the motion is nothing more than a request that the district court change its mind ... it is not authorized by Rule 60(b)." *United States v. Williams,* 674 F.2d 310, 312 (4th Cir.1982). These circuits have emphasized that unless extreme circumstances exist, the movant has other options to challenge the decision, notably, the right to appeal. *See Center for Nuclear Responsibility v. United States Nuclear Reg.,* 781 F.2d 935, 940 n. 8 (D.C.Cir.1986); *McKnight,* 726 F.2d at 337 ("The plaintiff may not, however, use Rule 60(b) to correct alleged errors of law by the district court which may have been raised by filing a timely appeal....").

The Second Circuit has adopted a slightly more permissive standard, cautiously allowing application of Rule 60(b) only "with very special facts." *Tarkington v. United States Lines Co.,* 222 F.2d 358, 360 (2d Cir.1955) (allowing Rule 60(b) motion when the Supreme Court overturned case law relied on in the district court's judgment). On the most permissive end of the spectrum, the Ninth Circuit does allow parties to employ Rule 60(b) motions to challenge alleged legal errors. *See Liberty Mutual Ins. Co. v. EEOC,* 691 F.2d 438 (9th Cir.1982).

Most importantly for this court, the D.C. Circuit has adopted an approach similar to the Second Circuit's. The D.C. Circuit allows Rule 60(b) motions to challenge alleged legal errors only in the most extreme situations: namely, when the district court based its legal reasoning on case law that it had failed to realize had recently been overturned. *See District of Columbia Fed'n of Civic Ass'ns v. Volpe,* 520 F.2d 451, 451–53 (D.C.Cir.1975).

Applying the D.C. Circuit's standard to the case at bar, the court holds that the plaintiff fails under Rule 60(b) since he is merely arguing that the court made an error of legal reasoning.

## B. The Deadline for the Plaintiff's Possible Appeal

The court is sympathetic to the fact that the plaintiff is proceeding *pro se* and that he may not be familiar with certain procedural deadlines. Accordingly, the court notes that the plaintiff does have another option: namely, he can appeal to the United States Court of Appeals for the D.C. Circuit. Federal Rule of Appellate Procedure 4(a)(1)(B) lays out the time frame for a party to file a notice of appeal with the district clerk: "When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered." FED. R. APP. P. 4(a)(1)(B). Since the federal government is the defendant in this case, the plaintiff has 60 calendar days from December 12, 2000 to file his appeal.

## IV. CONCLUSION

For all of these reasons, the court denies the plaintiff's motion for reconsideration.

In addition, the court denies all of the plaintiff's other pending motions since they were improperly filed after the court dismissed the case on the merits. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of January, 2001.