**Rosalie L. TURNER, M.D., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civil Action No. 02–1514 (RMU).**

United States District Court,
District of Columbia.

June 16, 2003.

---

Gwendolyn Delora Prioleau, Frazer Walton, Jr., Washington, DC, for Plaintiff.

Holly Michelle Johnson, Office of Corporation Counsel, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

URBINA, District Judge.

#### Denying the Defendant's Motion to Stay the Proceedings; Granting the Defendant's Motion for an Enlargement of Time to File a Responsive Pleading

### I.  INTRODUCTION

Plaintiff Rosalie Turner is a doctor and employee of the Southeast Sexually Transmitted Disease ("STD") Clinic ("the Southeast Clinic") at D.C. General Hospital. Defendant District of Columbia provides services through the D.C. Department of

Health ("the Department") and D.C. General Hospital. The plaintiff sues the defendant under 42 U.S.C. § 1983, the Equal Pay Act, the Americans with Disabilities Act, the Rehabilitation Act, and for intentional infliction of emotional distress. The defendant now moves this court to stay the proceedings until the disposition of a related case in the Superior Court of the District of Columbia, or, in the alternative, for an enlargement of time to file a responsive pleading. Because there is no final judgment in the Superior Court case or in the instant case, the court denies the defendant's motion to stay these proceedings and grants the defendant's motion for an enlargement of time to file a responsive pleading.

## II. BACKGROUND

### A. Factual Background

In 1972, the defendant hired the plaintiff as Chief of the Southeast Clinic. Compl. ¶ 7. In 1976, the defendant promoted the plaintiff to the position of Bureau Chief. *Id.* ¶ 20. As a result of understaffing, however, the plaintiff allegedly performed not only the full-time duties of Bureau Chief, but the full-time duties of Chief and Clinic Physician. *Id.* ¶ 23. In 1977, based on the taxing demands of these duties, the plaintiff requested and received permission to return to the position of Chief. *Id.* ¶¶ 24–25. Due to continued understaffing, in 1989 the plaintiff began to perform various administrative, supervisory, and non-professional duties, including ordering supplies and medicines, maintaining stock and keeping time. *Id.* ¶ 31.

In 1995 the Southeast Clinic merged with another STD clinic ("the Northwest Clinic"), and several Northwest Clinic physicians, a nursing assistant, and a preventative-health technician transferred to the Southeast Clinic. *Id.* ¶¶ 35–36. Within one month, most of the Northwest Clinic physicians resigned or retired. *Id.* ¶ 37. In addition, although the nursing assistant had performed the duties of ordering supplies and medicines at the Northwest Clinic, the nursing assistant was directed not to perform those duties at the Southeast Clinic. *Id.* ¶¶ 38–40. Finding herself performing administrative duties in addition to the duties of Chief, while often serving as the only attending physician and clinician, the plaintiff repeatedly discussed the problem of understaffing with the Bureau Chief. *Id.* ¶¶ 41–43. In 1997, the plaintiff informed the Bureau Chief that her duties were taking a toll on her health and were preventing her from participating in management-training courses that could lead to increases in salary and benefits. *Id.* ¶¶ 45–46. In 1999, the plaintiff spoke to the Department's Acting Chief of STD Control about the effect of the Southeast Clinic's understaffing on patient care and the plaintiff's health. *Id.* ¶ 51. By 2000, only one nurse-clinician and the plaintiff remained on staff at the Southeast Clinic. *Id.* ¶ 53.

The plaintiff alleges that in March 1999, as a direct result of the physical demands and stress caused by the understaffing of the Southeast Clinic, she became seriously ill with hypertension and diabetes. *Id.* ¶ 54. According to the plaintiff, the Department's Administrator of Preventative Health Services promised to hire a second physician for the Southeast Clinic but did not do so. *Id.* ¶¶ 57–58. Given the continued understaffing, the plaintiff left the position of Chief for the position of Medical Officer. *Id.* ¶ 59. The plaintiff alleges, however, that the District's Acting Director of the Office of Personnel conditioned her salary upon assuming additional responsibilities not required of male physicians with comparable specialties, credentials and years of service. *Id.* ¶¶ 60–64. Moreover, the plaintiff contends that in contrast to her duties as Chief, the male physician who subsequently assumed the

Chief position enjoys fewer responsibilities, rarely attending to patients while receiving administrative support. *Id.* ¶¶ 65–70. In addition, the new Chief directed her to continue performing certain administrative and supervisory duties that she performed as Chief. *Id.* ¶ 71. In the plaintiff's view, the defendant's acts and omissions caused the terms and conditions of her employment to become so intolerable that the plaintiff had no alternative but to move to lesser positions with corresponding decreases in salary. *Id.* ¶¶ 26, 72, 86.

## B. Procedural History

On July 31, 2002, the plaintiff filed suit in this court, alleging violations of 42 U.S.C. § 1983, the Equal Pay Act, the Americans with Disabilities Act, the Rehabilitation Act, and for intentional infliction of emotional distress. Compl. ¶¶ 95, 110, 128, 131–34. She seeks back- and front-pay, at least $3 million in compensatory damages and at least $2 million in punitive damages. *Id.* ¶¶ 19, 22–23, 26, 27. On December 18, 2002, citing the extensive investigation required by the complaint's allegations, the defendant requested an extension of time to file a responsive pleading which the court granted. Def.'s Consent Mot. to Enlarge Time at 1–2; Order dated Jan. 3, 2003. On January 31, 2003, the defendant moved the court to stay the proceedings pending the disposition of a related lawsuit filed by the plaintiff in the Superior Court, or, in the alternative, for an enlargement of time to file a responsive pleading. Def.'s Mot. for Stay ("Def.'s Mot."). The court now turns to the defendant's motion.

## III. ANALYSIS

### A. Legal Standard for Res Judicata

■ "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C.Cir.1983). Res judicata has two distinct aspects— claim preclusion and issue preclusion (commonly known as collateral estoppel)—that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Communications, Inc. v. Fed. Communications Comm'n*, 254 F.3d 130, 142 (D.C.Cir.2001) (citing *id.*); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C.Cir.1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C.Cir.2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C.Cir.1992) (quoting *Allen*, 449 U.S. at 94, 101 S.Ct. 411). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [ ] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C.Cir.1981); *see also Allen*, 449 U.S. at 94, 101 S.Ct. 411.

### B. The Court Concludes That Absent a Decision or Final Judgment, Res Judicata Does Not Apply

■ The defendant argues that this court should stay the proceedings in this

case until the related Superior Court proceeding has reached final judgment. Def.'s Mot. ¶¶ 7, 12. Specifically, the defendant points out that in September 2000, the plaintiff filed a complaint alleging breach of contract and tort in the Superior Court, and that in May 2001, the Superior Court stayed this complaint at the plaintiff's request. *Id.* ¶¶ 3–4; Exs. A–C. Alleging that the plaintiff's dual filing constitutes "forum shopping in the extreme," the defendant argues that the plaintiff "should not be allowed to pursue the same cause of action in two different courts at the same time." Def.'s Mot. ¶¶ 5, 9; Def.'s Reply at 2, 6. Acknowledging that neither this nor the Superior Court proceeding have resulted in a decision or final ruling on the merits, the defendant cites to case law that it believes nonetheless supports a stay of this case. Def.'s Reply at 5. In response, the plaintiff implies that a stay is not warranted because the Superior Court case "is a completely different cause of action" based on common-law contract and tort claims, rather than federal statute. Pl.'s Opp'n at 2. The plaintiff also asserts that the defendant cannot point to authority requiring her to file her federal claims in the Superior Court. *Id.*

A critical element of res judicata—and one that is missing here—is a decision or final judgment on the merits. *I.A.M. Nat'l Pension Fund*, 723 F.2d at 946–47. The submissions in this case indicate that on September 19, 2000, the plaintiff filed a complaint in the Superior Court containing factual allegations virtually identical to those contained in the instant complaint. *Compare* Compl. *with* Def.'s Mot. Ex. A. On February 14, 2001, with the consent of the defendant, the plaintiff moved the Superior Court to stay the proceedings pending mediation. *Id.* Ex. B. The Superior Court granted her consent motion on May 18, 2001. *Id.* Ex. C. That stay apparently remains in effect. Pl.'s Opp'n at 2 (noting

that "the common law case filed in Superior Court was stayed" and making no reference to any further proceedings in that case). In sum, and as acknowledged by the defendant, no decision or final judgment exists in the Superior Court case. Def.'s Reply at 5.

Notwithstanding the lack of decision or final judgment, however, the defendant contends that "[a] stay or total bar of these proceedings is not unprecedented" here, and draws attention to an opinion issued by a federal district court in Kansas. *Id.* (citing *Bui v. IBP, Inc.*, 205 F.Supp.2d 1181). In *Bui v. IBP, Inc.*, the court dismissed without prejudice the plaintiff's state-law claim of retaliatory discharge for lack of subject-matter jurisdiction. *Bui*, 205 F.Supp.2d at 1184. The plaintiff appealed the court's decision and also filed a second complaint based on the same facts, parties and transactions as in the first case. *Id.* In a carefully reasoned opinion, the *Bui* court applied collateral estoppel to bar the plaintiff's second complaint, concluding that the first dismissal for lack of subject-matter jurisdiction precluded the second action when no new jurisdictional facts appeared in the interim. *Id.* at 1187–89. Bolstering the *Bui* court's conclusion was the practical effect of the plaintiff's appeal of the court's first dismissal. *Id.* at 1189. The *Bui* court noted that if collateral estoppel did not apply and the Tenth Circuit reversed the court's dismissal of the first complaint, the defendant would be forced to defend two identical federal claims in the same federal forum and could face inconsistent judgments. *Id.* Conversely, if collateral estoppel did not apply and the Tenth Circuit affirmed the court's dismissal, the plaintiff would be allowed a second bite at the jurisdictional apple. *Id.* The practical effect of the appeal thus supported the *Bui* court's deci-

sion to apply collateral estoppel to its initial dismissal. *Id.*

In comparing the instant case to *Bui*, the defendant states that although the *Bui* court did not reach a final adjudication on the merits in the first complaint, it nonetheless precluded the plaintiff's second complaint to prevent the defendant from being forced to defend itself twice for the same alleged conduct and to avoid inconsistent judgments on the same claim. Def.'s Reply at 5, 8. But although the *Bui* court recognized that its dismissal did not qualify as an adjudication on the merits, it found that its dismissal had preclusive effect as to the jurisdictional matter actually adjudicated. *Bui*, 205 F.Supp.2d at 1187 (citing *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C.Cir.1999)). In contrast, here there is no decision or final judgment to which the court can give preclusive effect. Moreover, should the Superior Court or this court issue a decision or final judgment, the application of res judicata should prevent inconsistent judgments. As the defendant itself notes, "[i]f the [Superior Court case] was dismissed on the merits, [this case] would be barred under the principle of *res judicata* ... [and s]imilarly, if *this* Court dismissed the plaintiff's case on the merits, her Superior Court case would be barred." [1] Def.'s Reply at 6. It was the plaintiff's choice to file in the Superior Court as well as in this court, and she bears the risk accordingly.[2] *E.g., Davenport v. N.C. Dep't of Transp.*, 3 F.3d 89, 97 n. 8 (4th Cir.1993) (noting that "[a] plaintiff's invocation of a state forum that can't

handle all her claims is at risk of preclusion of all [when another] adequate forum was available").

■ Accordingly, because there is no decision or final judgment in the Superior Court case, the court denies the defendant's motion to stay these proceedings until the disposition of the Superior Court case. *I.A.M. Nat'l Pension Fund*, 723 F.2d at 946–47; *Novak*, 703 F.2d at 1309. Because of the time span encompassed by the complaint and the attendant investigation demands on the defendant, however, the court grants the defendant's motion for a 90 day enlargement of time to file a responsive pleading.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to stay these proceedings and grants the defendant's motion for an enlargement of time to file a responsive pleading. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of June, 2003.

---

1. The defendant goes on to state that as a result, "the two different jurisdictions could come to *different* conclusions on the *same claim*, leading to conflicting judgments." Def.'s Reply at 6. But as the defendant itself explains, that is exactly the outcome that res judicata should prevent. *Id.*

2. "In general, '[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Reiman v. Smith*, 12 F.3d 222, 223 (D.C.Cir.1993) (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).