Joy **EVANS** et al., **Plaintiffs,**

**United States of America,**
**Plaintiff-Intervenor,**

v.

Walter **WASHINGTON** et al.,
**Defendants.**

**Civ. A. No. 76–0293.**

United States District Court,
District of Columbia.

June 14, 1978.

Robert S. Catz, Urban Law Institute of the Antioch School of Law, Washington, D. C., for plaintiffs.

Susan Goldsmith Daniel, Leonard Rieser, Dept. of Justice, Civil Rights Div., Washington, D. C., for plaintiff-intervenor.

George T. Masson, Jr., Nancy R. Dorsch, Asst. Corp. Counsels, Washington, D. C., for defendants.

## FINAL JUDGMENT AND ORDER

JOHN H. PRATT, District Judge.

Upon consideration of Plaintiffs' Motion for Partial Summary Judgment, the responses and submissions filed by all the parties in conjunction therewith, and the record in this action, and it appearing that the defendants during the pendency of this litigation have initiated policies and practices which conform to some of the provisions hereinafter set forth, but that there remain significant deficiencies necessitating this Court's entry of injunctive relief, and it further appearing that the defendants have consented to the entry of this Order and Judgment so as to assure protection of the rights of plaintiffs and plaintiff-intervenor, therefore, it is, by the Court, this 14th day of June, 1978, ORDERED AND DECREED:

## I. DECLARATORY AND PERMANENT INJUNCTIVE RELIEF

1. The mentally retarded residents of Forest Haven who constitute the plaintiff class (hereinafter class members) have a federal constitutional right to habilitative care and treatment based upon the Due Process Clause of the Fifth Amendment.

2. Each class member has a federal constitutional right to be free from harm based upon the Fifth and Eighth Amendments.

3. Each class member has a federal constitutional right, based upon the Due Process Clause of the Fifth Amendment, to receive habilitative care and treatment in the alternative least restrictive of individual liberty and to be kept free from harm.

Habilitation is the process by which a resident is assisted in acquiring and maintaining those life skills which enable him to cope more effectively with the demands of his own person and of his environment and to raise the level of his physical, mental, and social capabilities. Habilitation includes but is not limited to, programs of formal, structured education and training.

Habilitative care in the alternative least restrictive of individual liberty means living as normally as possible and receiving appropriate individualized services in the community in the least separate, most integrated and least restrictive settings.

As used in this Order, "integrated" refers to the integration of mentally retarded persons with nonretarded persons in the community.

4. The Court finds that violations of the federal constitutional rights of class members, as set forth in paragraphs 1 thru 3, supra, have occurred.

## II. PROVISION OF COMMUNITY LIVING ARRANGEMENTS AND SERVICES NECESSARY AND SUFFICIENT TO THE INDIVIDUALIZED HABILITATION OF CLASS MEMBERS

5. Defendants, their successors, officers, agents, servants, employees, and all persons in active concert and participation with them are permanently enjoined to:

a) Develop and to provide for each class member a written individualized habilitation plan, based upon individualized assess-

ments and formulated in accordance with professional standards (as set forth in Joint Commission on Accreditation of Hospitals, Accreditation Council for Services for Mentally Retarded and other Developmentally Disabled Persons, *Standards for Services for Developmentally Disabled Individuals* (1977)) with the participation of the retarded person, his or her parents, guardian, advocate, and parent surrogate, if there is one; and to provide for each an individualized habilitation program designed in accordance with the plan, to provide annual periodic review of the plan and program, and the opportunity to each member of the plaintiff class and his or her parent, guardian, advocate, and surrogate parent, if there is one, to participate in such review.

b) Provide all class members with community living arrangements suitable to each, together with such community-based day programs and services as are necessary to provide them with minimally adequate habilitation until such individuals are no longer in need of such living arrangements, programs and/or community services. Such community living arrangements, programs and other services shall be provided in the least separate, most integrated and least restrictive community settings.

c) Develop a Plan of Implementation as referenced at paragraph 7, *infra*, for the provision of such community living arrangements, programs and supportive services. The community living arrangements to be provided shall in no event house in a single residence more than eight mentally retarded persons; except that if defendants find that the medical needs of certain residents are such as to require, in defendants' estimation, placement in facilities housing more than eight mentally retarded persons, defendants shall (i) identify such residents in the Plan and in the reports provided for in paragraph 6, *infra*, as the situation may arise and (ii) set forth proposed types of placements for such residents and the rationales therefor.

d) Provide all necessary and proper monitoring mechanisms to assure that community living arrangements, programs and supportive community services of the necessary quantity and quality are provided and maintained.

e) Defendants shall make every reasonable effort, including seeking such additional funding as may be required, to secure the expert services of an independent private organization for the preparation of a demographic study, to be completed by December 31, 1978, of the capacity of the District of Columbia area to accommodate Forest Haven residents in appropriate community living arrangements. Said study shall include, but not be limited to, the following areas: housing, zoning, land use, population density, concentrations of group living facilities and blighted areas.

6. Defendants shall identify and retain the expert full-time services of a Developmental Disabilities professional (hereafter "DDP") to assist them and the Court in coordinating and carrying out the implementation of the provisions of this Order. The DDP in conjunction with the defendants shall have the duty, obligation and responsibility to plan, organize, coordinate and monitor the implementation of this and any further Order of the Court. The DDP through the Director of DHR shall until further Order of this Court file a verified report every ninety (90) days from the date of appointment of the DDP detailing the status and progress of the defendants in the implementation of this and any further Order of the Court. Defendants, their successors, officers, agents, servants, employees, and all persons in active concert or participation with them, shall assist the DDP in securing access to all premises, records, documents, class members and other necessary information to assure that the provisions of this Order are carried out.

The DDP shall report directly to the Director of the Department of Human Resources who shall make available to the DDP appropriate professional and other resources, including consultants, as are necessary and appropriate to execute the Court's Order.

The defendants shall identify and secure the expert services of the DDP within 80

days of the entry of this Order, and shall submit a plan within 30 days of the date of appointment of the DDP for the staffing and resources to be made available to the DDP. If the staff so identified is not available at that time, defendants will as an interim measure immediately provide equivalent staff to the DDP on a consulting and/or contract basis.

In selecting the DDP, the Director of DHR shall create a three-person search committee to recommend the appointment of the DDP. Plaintiffs and Plaintiff-Intervenor shall jointly select one designee as a member of the three-person search committee. Plaintiffs and Plaintiff-Intervenor shall have the opportunity to review and comment on any proposed selection of the person to serve as DDP, prior to such selection.

7. The DDP and defendants shall prepare and present to the Court for its approval and Order a Plan of Implementation which shall include but not be limited to the following plans:

(a) A plan specifying the quantity and type of community living arrangements programs and other community services necessary for the habilitation of all plaintiffs in the least separate, most integrated, least restrictive community setting, taking into account the existing community services in the metropolitan Washington, D.C. area and including specification of the additional residential placements, programs and services necessary, the delineation of responsibility for their creation and maintenance, their funding and a specified time frame for their provision, and the staffing patterns required. The delineation of responsibility for the creation and maintenance of such living arrangements, programs and services shall include specific assignments by activity to specifically identified agents of the defendants.

(b) A plan specifying resources, procedures, and a schedule for individual evaluations and the formulation of individual exit and community habilitation plans required for the habilitation of each member of plaintiff class and for the periodic review of such plans.

(c) A plan for the recruitment, hiring and training of a sufficient number of qualified community staff to prepare individual exit and community habilitation plans for each member of plaintiff class and upon completion of such plans to assist in the execution of the responsibility to create, develop, maintain, and monitor the community living arrangements, programs and other services required.

(d) A plan for the creation, development and maintenance of mechanisms to monitor a system of community services to assure that community living arrangements, programs and other services of the necessary quality and quantity are continuously provided to class members in the least separate, most integrated, least restrictive community settings, which plan shall include, but not be limited to, the provision of advocates to assist in the protection of the rights of each member of plaintiff class.

(e) A plan for the creation of a Community Advisory Board whose responsibility shall include investigating, monitoring and evaluating complaints with regard to the enforcement of the Court's Order. The Board shall make written findings and recommendations quarterly to the DDP and the Director of the Department of Human Resources and to counsel. Membership on the Board shall include, but not be limited to, parents and relatives of class members, chaplains serving Forest Haven residents, representatives of Friends of Forest Haven and of the District of Columbia Association of Retarded Citizens. Members of the Board shall be reimbursed by defendants for their reasonable expenses incurred in carrying out their responsibilities.

(f) A plan for the provision of continuing information to, and for consultation with, members of the class, their parents, guardians, advocates and surrogate parents concerning the effect and implementation of this Court's Order and defendants' plans to provide community-based living arrangements, programs and services to class members.

(g) A plan to safeguard each class member's personal possessions, including money, but not limited to, provision for depositing each class member's funds in interest-bearing accounts and for withdrawal of such funds.

(h) A plan to provide opportunities for alternative employment as necessary and appropriate to each employee of Forest Haven, including training for employment in community programs.

8. The defendants in conjunction with the DDP shall within thirty (30) days after the appointment of the DDP report to this Court upon their recommendations as to the proper and necessary schedule for the most prompt submission to the Court of the aforesaid Plan of Implementation as well as the Plan for Interim Operation referenced at paragraph 13, *infra*. Upon receipt of this schedule the Court shall give the parties an opportunity to be heard thereon.

9. Within not more than one hundred twenty (120) days after the submission of the report referenced in paragraph 8, the date certain to be set by the Court upon receipt of the report mentioned in the preceding paragraph, the defendants in conjunction with the DDP shall file with this Court the plans required at paragraph 7(a) and 7(b), *supra* and 13, *infra*. Upon receipt of these plans the Court shall set the matter down promptly for hearing. Following the adoption of any plan by order of the Court, said plan shall be implemented forthwith.

10. (a) Defendants are enjoined to make every reasonable effort to carry out the deinstitutionalization of at least thirty (30) residents of Forest Haven by the end of Fiscal Year 1978. The deinstitutionalization of a resident shall include the provision of a community living arrangement suitable to that resident, together with such community-based day programs and services as are necessary to provide the resident with minimally adequate habilitation. The above figure shall not include any DHR-approved residential placements independently developed, created or secured by private individuals or community organizations. Defendants shall, within thirty (30) days following the close of Fiscal Year 1978, submit to all counsel and to the Court a report detailing their compliance with the requirements of this paragraph.

(b) Defendants are enjoined to make every reasonable effort to obtain sufficient funding for, and to carry out, the deinstitutionalization of at least 60 residents of Forest Haven during Fiscal Year 1979. The deinstitutionalization of a resident shall include the provision of a community living arrangement suitable to that resident, together with such community-based day programs and services as are necessary to provide the resident with minimally adequate habilitation. For purposes of this paragraph, the phrase "every reasonable effort" shall include without limitation, reasonable efforts to (i) seek amendments to the FY 1979 executive budget, (ii) seek supplemental budget authorizations and appropriations for FY 1979, and (iii) reprogram and reallocate funds appropriated to the District of Columbia for FY 1979. It is contemplated that funds will be sought for, and expended upon, such increased administrative and support services as are required in order to carry out the deinstitutionalization described herein, as well as upon direct services to those residents who are deinstitutionalized.

(c) Defendants are enjoined to make every reasonable effort to obtain sufficient funding for, and to carry out, the deinstitutionalization of at least an additional 110 residents of Forest Haven during Fiscal Year 1980. All of the provisions set forth in part (b), *supra*, shall apply, except that the term "FY 1979" shall be replaced by "FY 1980."

(d) At such time as the Plan of Implementation described in paragraph 7, *supra*, is ordered into effect, defendants shall be released from the requirements of parts (b) and (c), *supra*.

(e) In deinstitutionalizing class members pursuant to paragraphs (a) through (c), *supra*, defendants shall comply with the requirements of paragraph 5(c), *supra*, pertaining to placement in residences housing more than eight persons; except that the

phrase "a report to counsel and the Court" shall be substituted for the phrase "the Plan" appearing in that paragraph.

11. Defendants shall make every reasonable effort to provide suitable community living arrangements, programs and the other community services necessary to the habilitation of the individual named plaintiffs at the earliest possible opportunity in a manner consistent with this Order.

12. There shall be no admissions to Forest Haven until further order of this Court.

## III. INTERIM OPERATION OF FOREST HAVEN

13. The defendants in conjunction with the DDP shall prepare and present to the Court for its Order a Plan for the Interim Operation of Forest Haven pending the prompt and orderly placement of Forest Haven residents in community living arrangements and programs with the necessary supportive services. The plan shall address, but need not be limited to, the matters referenced in paragraphs 14a–s, infra, any other conditions at Forest Haven which threaten the life, safety or well-being of any Forest Haven resident, and measures to assure that the interim operation of Forest Haven, including all activities therein, is consistent with the prompt provision of living arrangements, programs and services in the community necessary to the habilitation of each Forest Haven resident. Such plans shall include a delineation of responsibility and specific assignments by activity to specifically identified agents of the defendants.

14. Defendants, their successors, officers, agents, servants and employees are enjoined to exert maximum efforts to comply with the following requirements:

(a) Acts of physical or psychological abuse, neglect or mistreatment of any Forest Haven resident, including, but not limited to assaults, fractures, cuts, bruises, abrasions, burns, bites, lacerations, drug overdoses and verbal abuse, are prohibited. Each and every alleged incident of abuse, neglect or mistreatment shall be promptly investigated and a report made. The manner and mechanism of such investigation shall be developed and established by the plan referenced in paragraph 13, supra. A chronological compilation of the above reports shall be maintained by defendants and made available in the manner specified in paragraph 15, infra.

(b) Utilizing seclusion for any purpose is prohibited. Seclusion is defined as the practice of placing a person alone in a locked room.

(c) Employing physical restraints or "time-out" procedures, including the placement of a person alone in a room, as punishment, for the convenience of staff or as a substitute for a habilitation program is prohibited. Physical restraints and time-out procedures shall be applied only over short specified periods of time in conjunction with other specified programmed activities as set forth in the resident's individualized habilitation plan. In addition, physical restraints and time-out procedures shall be applied only if alternative techniques have failed and only if such restraint or time-out procedure imposes the least restriction consistent with its purpose. Physical restraint shall be employed only when absolutely necessary to protect Forest Haven residents from injuries to themselves or to prevent injuries to others. Orders for restraints shall not be in force for longer than 12 hours. There shall be no PRN (pro re nata, as needed) restraint orders. A resident placed in restraint shall be checked at least every thirty minutes by appropriately trained staff and a record of such checks shall be kept. Mechanical restraints shall be designed and used so as not to cause physical injury to the resident and so as to cause the least possible discomfort. Opportunity for motion and exercise shall be provided for a period of not less than 10 minutes during each two-hour period in which restraint is employed. The Plan for Interim Operation of Forest Haven shall set forth in detail a written policy that defines in precise terms the uses of restraint, limitations on the duration of time the technique may be employed, the training and qualifications of staff members who may

authorize its use, and a mechanism for monitoring and controlling its use.

(d) Administering excessive or unnecessary medications to class members is prohibited.

(e) Using medication as punishment, for the convenience of the staff, as a substitute for programming, or in quantities that interfere with a class member's individual developmental program, is prohibited.

(f) Only appropriately trained and qualified staff are permitted to administer drugs to class members.

(g) Training programs shall be provided to staff who administer drugs to class members. The nature of such training programs, and the qualifications to be required of staff who administer drugs to residents shall be established in the Plan for Interim Operation of Forest Haven.

(h) Administering drugs to class members on a PRN (*pro re nata,* as needed) basis is prohibited. Written policies and procedures governing the safe administration and handling of medications shall be established pursuant to guidelines developed in the Plan for Interim Operation of Forest Haven.

(i) Monitoring of each class member's medications and provision for at least monthly reviews by a physician of each resident's medications is required.

(j) A program of medical, dental and health related services for class members which provides accessibility, quality and continuity of care for physical illness or injury is required. The Plan for Interim Operation of Forest Haven shall develop and establish medical, dental and health related services to class members. All injuries or illnesses which require the attention of a physician shall be immediately reported to the class member's parent or guardian.

(k) Individualized adaptive equipment, including, but not limited to, wheelchairs, walkers, braces, feeding apparatus, and auxiliary sensory devices such as hearing aids shall be provided to each physically handicapped class member who needs them. Each and every class member shall be immediately evaluated to ascertain the need for such equipment.

(l) Each class member shall receive a nourishing, well-balanced diet and assistance in development of proper eating habits. Denial of a nutritionally adequate diet shall not be used as punishment.

(m) No class member shall be fed in any position less than the maximum upright position consistent with his or her capabilities and handicaps.

(n) Aversive behavior modification techniques shall not be employed on any resident.

(o) No class member shall be denied habilitative programming as punishment.

(p) Each class member shall be provided with all reasonable opportunities for visitation, for telephone communication, and to send and receive mail.

(q) All class members shall be compensated in accordance with all applicable District of Columbia and federal laws for all labor performed which has economic benefit to Forest Haven.

(r) Every Forest Haven building in use by residents shall be kept clean, odorless, insect-free, and in compliance with applicable laws and regulations.

(s) Appropriate training programs for all staff shall be developed and implemented. Such programs shall deal with, but not be limited to, the matters in subparagraphs a–r, *supra,* in order to provide each class member with habilitation and care in a safe, humane environment pending his or her placement in community-based living arrangements and programs.

15. Counsel for plaintiff and plaintiff-intervenor and their experts and investigators and members of the Community Advisory Board shall, upon reasonable notice, be permitted access by the defendants to all the premises of Forest Haven and to all facilities of the defendants or their agents wherein class members are served and to all pertinent documents and records.

16. All bulletins, memoranda, and directives of official policy issued by the de-

fendants in connection with the implementation of this Court's Order shall, upon issuance, be sent to counsel for plaintiffs and plaintiff-intervenor.

17. Defendants shall give notice of this Order to their successors, officers, agents, and employees affected by the provisions contained herein. Defendants shall also give notice of this Order to the residents of Forest Haven, their parents or immediate relatives, guardians, advocates, and surrogate parents, if any. A copy of such notice(s) shall be provided to counsel for plaintiffs and plaintiff-intervenor.

18. Nothing in this Order shall be construed as (a) waiving the right of plaintiffs and plaintiff-intervenor to move this Court at a later time for an Order appointing a Special Master pursuant to Rule 53, Federal Rules of Civil Procedure, or (b) waiving the right of defendants to move for a declaration that either the plaintiffs or the plaintiff-intervenor have duties and obligations not heretofore decreed in respect to defendants' efforts to comply with this Order.

19. Jurisdiction is retained by this Court until further Order.