**Billy Ray DALE, Plaintiff,**

v.

**EXECUTIVE OFFICE OF THE PRESIDENT, Defendant.**

**No. CIV. A. 99–2453(RMU).**

United States District Court, District of Columbia.

Sept. 25, 2001.

Paul J. Orfanedes, Washington, DC, for Plaintiff.

Mark T. Quinlivan, U.S. Department of Justice, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

URBINA, District Judge.

**GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

This case poses a distinct legal question: whether the Privacy Act of 1974, 5 U.S.C. § 552a ("the Privacy Act"), applies to the White House. Billy Ray Dale ("the plaintiff" or "Mr. Dale"), the former Director of the White House Travel Office, argues that it does. The plaintiff sued the Executive Office of the President ("the defendant" or "the EOP") under the Privacy Act, seeking any and all files that it maintained on him. Declaring that the Privacy Act was not intended to cover the White House, the EOP denied the plaintiff's request.

The defendant now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Specifically, the defendant argues that Congress meant for the Privacy Act to apply only to "agencies," and that those components of the EOP whose sole function is to advise and assist the President are not "agencies" for purposes of the Privacy Act. The court agrees with the defendant. Thus, the court lacks jurisdiction to hear the plaintiff's Privacy Act claims and will grant the defendant's motion.

## II. BACKGROUND

Billy Ray Dale is the former Director of the White House Travel Office. *See* Compl. ¶ 3; Pl.'s Opp'n to Mot. for J. on the Pleadings ("Pl.'s Opp'n") at 2. In 1993, when President Clinton took office, Mr. Dale had been the Director of the White House Travel Office ("Travel Office") for 11 years, and had worked in the Travel Office in various capacities for almost 32 years. *See* Compl. ¶ 3. On May 19, 1993, the White House fired Mr. Dale. *See* Def.'s Mot. for J. on the Pleadings ("Def.'s Mot.") at 3. Subsequently, Mr. Dale was indicted on charges of financial improprieties in managing the Travel Office. *See* Pl.'s Opp'n at 2. In November 1995, Mr. Dale was acquitted of all charges. *See id.*

The media expressed a keen interest in the story of the firing of the seven Travel Office employees, and dubbed the episode "Travelgate." *See id.* at 2. In 1993, Congress began conducting hearings into the matter, and, on September 26, 1996, the House of Representatives issued a lengthy report on the subject that was critical of the Clinton White House. *See* Pl.'s Opp'n, Ex. 2. Former Attorney General Janet Reno also appointed an independent counsel to investigate whether any high-level White House official had engaged in criminal wrongdoing in this matter. In June 2000, Robert Ray, the independent counsel, issued a summary of his final report and announced that his office would not seek to prosecute any individuals involved in the matter. *See, e.g.,* Editorial, *Unindicted, but Not Cleared,* Washington Post, June 23, 2000 at A30.

Mr. Dale alleges that during the course of these various investigations, he "learned that the Clinton White House had requested Mr. Dale's FBI background investigation file—allegedly to determine whether he was 'suitable' for access to the White House—some seven (7) months after he had been fired." Pl.'s Opp'n at 3. In addition, the plaintiff claims that during the December 14, 1998 deposition of Linda Tripp in *Alexander v. Executive Office of the President,* Dkt. Nos. 96cv2123 and 97cv1288 (before United States District Judge Royce Lamberth), Ms. Tripp stated that, before Mr. Dale was fired from his job at the Travel Office on May 19, 1993, she saw what she believed was his FBI file on the desk of the then-Deputy White House Counsel Vincent Foster. *See*

Compl. ¶ 14. Mr. Dale also asserts that Ms. Tripp saw what she believed to be his FBI file in Mr. Foster's safe in then-White House Counsel Bernard Nussbaum's office. *See id.* ¶ 15.

On July 14, 1999, Mr. Dale submitted a written request, pursuant to the Privacy Act, for "any and all documents, including but not limited to files, that refer or relate in any way to Billy Ray Dale." *See id.*, Ex. 1. The request included a request for access to Mr. Dale's FBI background investigation file. *See id.* ¶ 19; Pl.'s Opp'n at 4. The EOP denied Mr. Dale's request on August 4, 1999.

In response, Mr. Dale filed this action on September 15, 1999, alleging that the EOP had violated the Privacy Act by not allowing him access to his records. In addition, Mr. Dale filed the case as a related case to *Alexander v. Executive Office of the President*, Dkt. Nos. 96cv2123 and 97cv1288, pursuant to Local Civil Rule 40.5 of the United States District Court for the District of Columbia. On January 24, 2000, Judge Lamberth ruled that the case was not a related case to *Alexander* under Rule 40.5 and transferred it to the Calendar Committee for random reassignment. Three days later, the plaintiff timely filed his appeal of Judge Lamberth's decision. The following day, the Calendar Committee assigned the case to this member of the court. *See* Reassignment of Docket No. 99cv2453. After the parties had fully briefed the related-case issue, the court issued a Memorandum Opinion on October 19, 2000. *See Dale v. Executive Office of the President*, 121 F.Supp.2d 35 (D.D.C. 2000) (Urbina, J.). In sum, the court agreed with Judge Lamberth's analysis

and held that the case did not meet the criteria for related-case status under Rule 40.5. *See generally id.*

In December 2000, the defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The court now turns to the defendant's motion.

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *See* FED. R. CIV. P. 12(c).[1] If a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6). *See Seber v. Unger*, 881 F.Supp. 323, 325 n. 2 (N.D.Ill.1995). "In fact, any distinction between them is merely semantic because the same standard applies to motions made under either subsection." 2 *Moore's Federal Practice* 3d § 12.38, 12–101; *see also GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995).

Under Rule 12(c), the court must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmoving party. *See Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 7 (D.D.C.1995). The court should grant a motion for judgment on the pleadings if the movant "is entitled to judgment as a matter of law." *See Burns Int'l Sec. Servs. v. International Union*, 47 F.3d 14, 16 (2d Cir.1995).

---

1. Rule 12(c) also states that if, on a motion for judgment on the pleadings, the court considers matters outside the pleadings, then the court shall treat the motion as one for summary judgment pursuant to Rule 56. In its analysis, the court will not consider any matters outside the pleadings, and will therefore treat the motion as one for judgment on the pleadings pursuant to Rule 12(c).

When a party moves to dismiss for lack of subject-matter jurisdiction or for judgment on the pleadings, the court may consider the motion based on the complaint standing alone or, where necessary, on the complaint "supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir. 1992). This standard follows from the "well-established practice—endorsed by the Supreme Court forty-five years ago ... of allowing the District Court to make findings when a factual dispute regarding jurisdiction does arise." *Id.* at 198 n. 6 (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

Under the Privacy Act, if a particular entity does not constitute an "agency," any action may be properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See Dong v. Smithsonian Institution*, 878 F.Supp. 244, 245 (D.D.C.1995), *rev'd on other grounds*, 125 F.3d 877 (D.C.Cir.1997).

## B. Analysis

This case presents little, if any, disagreement about the facts. Rather, the principal legal issue in this case centers on whether the White House qualifies as an "agency" under the Privacy Act. If a particular entity does not constitute an "agency" under the Privacy Act, any action may be properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). *See id.* at 245. In sum, if the court holds that the White House does not qualify as an "agency" under the statute, the plaintiff would not be entitled to the relief he seeks.

In its motion, the defendant argues that the Privacy Act applies only to "agencies" because the statute's plain language adopts the definition of "agency" laid out in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Def.'s Mot. at 4. The defendant maintains that the court should accept its syllogism. First, the defendant notes that the Supreme Court has interpreted the term "agency" in the FOIA to exclude those components of the EOP whose sole function is to advise and assist the president. *See* Def.'s Mot. at 4 (citing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980)). Second, Congress specifically provided that the term "agency" in the Privacy Act "means agency as defined in § 552(e) of [the FOIA]."[2] *See* 5 U.S.C. § 552a(a)(1). Therefore, the defendant argues, "it follows that those components of the EOP whose sole function is to advise and assist the president, including those components of the EOP at issue in this case, also are not 'agencies' for purposes of the Privacy Act ...." Def.'s Mot. at 4. Accordingly, the defendant asserts that the court lacks jurisdiction to hear the plaintiff's Privacy Act claims.

In contrast, the plaintiff relies on the fact that section 552(f) specifically includes the EOP. *See* 5 U.S.C. § 552(f); Pl.'s Opp'n at 6. Thus, the plaintiff argues that the defendant is avoiding the express language of the statute by claiming that the

---

**2.** Title 5 U.S.C. § 552(f), formerly section 552(e), now defines "agency." *See* 5 U.S.C. § 552(f); Pl.'s Opp'n at 6 n. 3. In a 1986 amendment, this definition was recodified as section 552(f), but no conforming amendment was made to the Privacy Act. *See Dong*, 878 F.Supp. at 245. Section 552(f) defines an agency as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *See* 5 U.S.C. § 552(f)(1).

Privacy Act does not apply to the EOP. *See* Pl.'s Opp'n at 6. Furthermore, he insists that although the Privacy Act states that it derives its definition of the term "agency" from the FOIA, because the objectives of the FOIA are different from the objectives of the Privacy Act, the court should read the term "agency" differently in the two statutes. *See* Pl.'s Opp'n at 7–15.

The defendant has a much stronger argument. Quite simply, the plaintiff's claim that Congress intended the term "agency" to have different meanings in the FOIA and in the Privacy Act—which was enacted within two months of the 1974 amendments to the FOIA at issue here—is not plausible. This is particularly true since the plain language of the Privacy Act provides that the term "agency" in the act "means agency as defined in section 552(e) of [the Freedom of Information Act . . . ]." *See* 5 USC § 552a(a)(1).

Moreover, the Supreme Court has interpreted the term "agency" in the Freedom of Information Act *to not include* those components of the EOP whose sole function is to advise and assist the president:

> The FOIA does render the "Executive Office of the President" an agency subject to the Act. 5 USC § 552(e). The legislative history is unambiguous, however, in explaining that the "Executive Office" does not include the Office of the President. The Conference Report for the 1974 FOIA amendments indicates that "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President" are not included within the term "agency" under the FOIA.

*Kissinger*, 445 U.S. at 156, 100 S.Ct. 960 (citing H.R. Conf. Rep. No. 93–1380, p. 15 (1974)). The defendant argues persuasively that because the FOIA's legislative history is so clear, and because of the close temporal connection between the 1974 FOIA amendments and the Privacy Act, those components of the EOP whose sole function is to advise and assist the president also are not "agencies." *See* Def.'s Mot. at 4. The court agrees, and holds that the White House does not constitute an "agency" for purposes of the Privacy Act.

In addition, while the court notes that it is not bound by the decisions of its sister district courts, in this case, five of the six federal district courts that have addressed this issue to date—including four of the five judges within this court who have addressed this issue—have reached the same conclusion as this court. *See Tripp v. Executive Office of the President*, 200 F.R.D. 140 (D.D.C.2001); *Broaddrick v. Executive Office of the President*, Dkt. No. 99cv3381, slip op. at 5–8(HHK) (D.D.C. March 16, 2001); *Barr v. Executive Office of the President*, Dkt. No. 99cv1695, slip op. at 3–7(JLG) (D.D.C. Aug. 9, 2000); *Sculimbrene v. Reno*, 158 F.Supp.2d 8, 13–21 (D.D.C.2001); *Falwell v. Executive Office of the President*, 113 F.Supp.2d 967, 968–70 (W.D.Va.2000); *but see Alexander v. FBI*, 971 F.Supp. 603, 606–07(RCL) (D.D.C.1997). The judges' nearly unanimous views on this issue underscore the strength of the defendant's position.

The court concludes that it lacks jurisdiction to hear the plaintiff's Privacy Act claims. Accordingly, the court grants the defendant's motion for judgment on the pleadings.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for judgment on the pleadings. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and

contemporaneously issued this 25 day of September, 2001.