Jane **DOES I THROUGH III, Plaintiff,**

v.

**DISTRICT OF COLUMBIA and MRDDA, Defendants.**

**No. CIV.A. 01–02398(HHK).**

United States District Court, District of Columbia.

Dec. 16, 2002.

Harvey S. Williams, Law Offices of Harvey S. Williams, Washington, DC, H. Aubrey Ford, III, Irvin V. Cantor, Cantor,

Arkema & Edmonds, Richmond, VA, for Plaintiff.

Jacques Philippe Lerner, Robert C. Utiger, Office of Corporation Counsel, D.C., Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Plaintiffs Jane Doe I, Jane Doe II and Jane Doe III,[1] are individuals with mental retardation who receive habilitation services from the District of Columbia. Plaintiffs, by their next friends, bring this action on their own behalf and on behalf of others similarly situated, against the District of Columbia and the Mental Retardation and Developmental Disabilities Administration ("MRDDA").[2] Plaintiffs claim that, while they were in defendants' care, defendants authorized non-emergency surgical procedures to be performed on them, without first obtaining legal consent. Plaintiffs bring this action under 42 U.S.C. § 1983 and seek declaratory, injunctive relief, and monetary relief.

This matter comes before the court on defendants' motion for partial judgment on the pleadings. Defendants claim that, even if relief is warranted, plaintiffs' access to injunctive relief is foreclosed by *res judicata*, as a result of prior litigation in *Evans & United States v. Williams*, Civil Action No. 76–293. Defendants further contend that MRDDA is not amenable to suit and therefore request that all claims against MRDDA be dismissed. Upon consideration of defendants' motion, plaintiffs' opposition thereto, and the record of this case, the court concludes that defendants' motion must be granted in part and denied in part.

## I. BACKGROUND INFORMATION

### A. The Present Litigation

Plaintiffs are individuals with mental retardation who have been institutionalized in District facilities since the 1960's. From the time of their institution through 1978, plaintiffs resided in Forest Haven, a facility which, before its closure, served the mentally retarded population of the District of Columbia. They now reside in other community-based facilities.

Plaintiffs bring this action because they claim that in the course of providing habilitation[3] services to plaintiffs and others similarly situated, the District adopted a policy under which the Superintendent of Forest Haven, and later, administrators of MRDDA, would routinely authorize medical procedures to be performed on institutionalized individuals. As a result of this policy, invasive, non-emergency procedures were reportedly performed on plaintiffs, without medical personnel ever consulting with, or receiving consent from, plaintiffs' families, guardians, or court-appointed advocates. This District policy, first known as Policy H–18, and presently known as Policy H–6, has reportedly been in existence for at least thirty years and has allegedly resulted in thousands of illegally-authorized surgical procedures, including forced sterilizations, hysterecto-

1. Plaintiffs are proceeding pseudonymously, per order of the court, Chief Judge Hogan, docketed November 15, 2001.

2. Plaintiffs seek class certification pursuant to Fed.R.Civ.P. 23(b). The court has not yet ruled on plaintiffs' motion.

3. " 'Habilitation' is the process by which a person with developmental disabilities is as-

sisted in acquiring and maintaining skills to cope more effectively with the demands of his or her own person and of his or her environment, and to raise the level of his or her physical, mental and social capabilities." Compl. ¶ 6. Or, as stated by the *Evans* plaintiffs, "habilitation" is a "term which incorporates care, treatment, education, and training." *Evans v. Washington*, Compl. ¶ 1.

mies, and abortions.[4] Plaintiffs contend that "defendants continue to this day to authorize surgical procedures on individuals with developmental disabilities, without the consent of any legally authorized representative." Compl. at 1.

Plaintiffs claim that the District's policy violates their substantive and procedural due process rights, secured by the Fifth and Fourteenth Amendments. Among other remedies, plaintiffs seek "[i]injunctive relief barring the District of Columbia from any further utilization of Policy H–6 or any other policy that allows city officials to consent to elective surgical procedures for plaintiffs and their fellow Class members without due process of law." Compl. at 10.

This matter comes before the court on defendants' motion for partial judgment on the pleadings. Defendants contend that *res judicata*, now commonly known as claim preclusion, bars plaintiffs from obtaining injunctive relief as a result of prior litigation in *Evans & United States v. Williams.* Defendants contend that Jane Does I, II, and III were class members in *Evans,* and that, as members of the *Evans* class, plaintiffs' exclusive equitable remedy is an appropriate motion before the *Evans* court.

## B. *Evans v. Washington*

Before the court may parse the scope and effect of the *Evans* action, a word on

that litigation is warranted. *Evans v. Washington* was a class action brought in 1976 by residents of Forest Haven. The gravamen of the *Evans* plaintiffs' complaint was that they were not receiving a "constitutionally minimal level of habilitation" while institutionalized at Forest Haven. *Evans* class members alleged a wide range of constitutional violations resulting from inhumane conditions at the facility. *Evans,* Compl. ¶ 1. Specifically, class members claimed that, while institutionalized at Forest Haven, they were over-medicated, beaten, and burned by the Forest Haven staff and were reportedly deprived of: decent nutrition, proper counseling and mental health treatment, sufficient educational and vocational training, and adequate dental and medical care.

In 1978, the district court essentially agreed with the plaintiffs and concluded that residents' constitutional rights had been violated. Thereafter, the parties agreed to a detailed consent judgment that addressed almost every aspect of life at Forest Haven and called for closing that facility and placing its residents in "community living arrangements." *See Evans v. Washington,* 459 F.Supp. 483 (D.D.C. 1978). Since the filing of the aforementioned consent decree in 1978, subsequent consent orders have been entered, although regrettably, the District has not always satisfied its obligations thereunder.[5] The *Evans* litigation continues to

---

4. In 1978, defendants allegedly gave their consent for an abortion to be performed on plaintiff Jane Doe III, without consulting with Jane Doe III's legal representative and without obtaining substituted judgment from a court. Compl. ¶¶ 19–21. In 1984, defendants allegedly took the same action in regard to plaintiff Jane Doe I. Compl. ¶¶ 12–15. In 1994, defendants allegedly gave their consent for an elective surgical procedure to be performed on plaintiff Jane Doe II's eye, without consulting with Jane Doe II's mother who

was also Jane Doe II's court-appointed advocate. Compl. ¶¶ 16–18.

5. The court's Order Adopting Proposed Findings of Fact of Special Master sums up court efforts to date:

 Defendants have, for over two years, chronically and unapologetically violated the terms of nearly every aspect of this Court's multiple Consent Orders. Defendants' unrelenting contempt of this Court's orders and their seeming inability to bring them-

this day. *See, e.g., Evans v. Williams,* 139 F.Supp.2d 79 (D.D.C.2001).

## II. ANALYSIS

### A. Legal Standard for Judgment on the Pleadings

The standard to be applied to defendants' motion for judgment on the pleadings is the same as that under Rule 12(b). *Dale v. Executive Office of the President,* 164 F.Supp.2d 22, 24 (D.D.C.2001); *Longwood Vill. Rest. v. Ashcroft,* 157 F.Supp.2d 61, 66–67 (D.D.C.2001). That is, the motion "should not be granted 'unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.'" *Beverly Enterprises, Inc. v. Herman,* 50 F.Supp.2d 7, 11 (D.D.C.1999) (citing *Kowal v. MCI Communications, Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To that end, the complaint must be construed liberally in the plaintiff's favor and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir. 1997); *Tele–Comms. of Key West, Inc. v.*

*United States,* 757 F.2d 1330, 1334–35 (D.C.Cir.1985). Where the pleadings present disputed questions of material fact, the movant's motion for judgment on the pleadings must be denied. *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977).

While the standard of review under 12(c) is important for our purposes, equally relevant is the scope of such a determination. Rule 12(c) provides that matters outside the pleadings may not be considered unless the court chooses to convert the motion into one for summary judgment.[6] As far as what constitutes a matter "outside the pleadings," it is well established that courts "are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation" without triggering the conversion requirement. *Black v. Arthur,* 18 F.Supp.2d 1127, 1131 (D.Or.1998); *accord Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994) (holding that the district court's consideration of a consent judgment in a previous suit did not convert the motion to

---

selves into compliance therewith, have created chaos....

*Evans v. Williams,* 35 F.Supp.2d 88, 89 (D.D.C.1999) (quoting Order). This court would be remiss were it not to at least highlight the irony that the District, after skirting its obligations under the *Evans* consent judgment for over twenty years, now seeks to use that judgment as a shield to limit its potential exposure in the present litigation.

**6.** In order for conversion to be proper, the non-moving party must be given adequate notice that the motion for judgment on the pleadings will be considered under the summary judgment standard of Rule 56. That is, the non-movant must "reasonably have recognized the possibility that the motion might be converted into a motion for summary judgment" and must have had the opportunity to appropriately respond. *Krijn v. Pogue Simone*

*Real Estate Co.,* 896 F.2d 687, 689 (2d Cir. 1990) (internal quotation marks and citations omitted). *See also* Fed.R.Civ.P. 12(c) (before the court makes such a conversion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion"); *Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989). Because (1) the parties have not been notified that defendants' motion will be considered under Rule 56, and (2) plaintiffs have not been afforded a reasonable opportunity to present evidentiary materials necessary to respond to such a motion, the court shall confine its review to only the pleadings and the public record. *See generally Garlanger v. Verbeke,* 223 F.Supp.2d 596, 606 n. 4 (D.N.J.2002). The court will not convert defendants' motion into a motion for summary judgment.

dismiss to one for summary judgment); *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir.1994); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979); *Dale* 164 F.Supp.2d at 25 (D.D.C.2001); *Baker v. Henderson*, 150 F.Supp.2d 13, 15 (D.D.C.2001). Thus, this court may properly review public records of the *Evans* litigation. The court may not, however, consider other information outside of the pleadings and has properly excluded such information from its consideration. *See Dale*, 164 F.Supp.2d at 24 n. 1.

## B. Claim Preclusion

 Generally, the doctrine of claim preclusion prevents claims between the same parties or their privies from being relitigated after a final judgment has been rendered in a prior suit. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). The preclusion encompasses not only claims which were raised in the first action, but also claims which should have or could have been raised during the prior litigation. *See, e.g., Nevada v. United States*, 463 U.S. 110, 129, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg.*, 723 F.2d 944, 947 (D.C.Cir.1983). Claim preclusion "ensures the finality of judgments in order to encourage reliance on judicial decisions, to prevent vexatious litigation and to free courts to decide other disputes." *Zip Dee, Inc. v. Dometic Corp.*, 886 F.Supp. 1427, 1431 (N.D.Ill.1995).

 In order for plaintiffs' claim to be barred by claim preclusion, there must be: (1) an identity of the cause of action in both suits; (2) an identity of parties in both suits; (3) a final judgment on the merits; and (4) a judgment rendered by a court of competent jurisdiction. *Am. For-*

*est Res. Council v. Shea*, 172 F.Supp.2d 24, 29 (D.D.C.2001) (citing *Paley v. Estate of Ogus*, 20 F.Supp.2d 83, 87 (D.D.C.1998)). Plaintiffs claim that three of these elements are unsatisfied. That is, plaintiffs argue that: (1) there is no identity of claims between the two lawsuits; (2) the parties in the suits are not identical; and (3) there has been no final judgment on the merits in the *Evans* action. As the party seeking to establish claim preclusion, defendants have the burden as to all of these matters. *See General Elec. v. Deutz Ag*, 270 F.3d 144, 158 (3d Cir.2001) ("The party seeking to take advantage of claim preclusion has the burden of establishing it.") (citation omitted); *Shapley v. Nevada Bd. of Comm'rs.*, 766 F.2d 404, 407 (9th Cir.1985); *Zip Dee, Inc.*, 886 F.Supp. at 1431.

### 1. Identity of Claims

In order to find claim preclusion, the court must find that this suit and the *Evans* suit concern the same "cause of action." *I.A.M.*, 723 F.2d at 947. While this standard is well established, the precise contours of a 'cause of action' are not as clear. "The term has been given varied treatment depending largely on the facts of each case." *Id.* at 947–48.

 The determination of what constitutes a single cause of action is focused on the "nucleus of facts" surrounding a transaction, rather than the legal theories utilized by the parties. *Page v. United States*, 729 F.2d 818, 820 (D.C.Cir.1984). Following the *Restatement (Second) of Judgments*, the D.C. Circuit has set forth several factors to determine if a claim arises from a previously litigated transaction or occurrence. These factors include, "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the

parties' expectations or business understanding or usage." *I.A.M.* 723 F.2d at 949 n. 5. A single cause of action may include not only claims previously litigated but also claims that arise from the same transaction or occurrence of the previous action that could have been litigated therein. *Stroman v. Blue Cross and Blue Shield Ass'n,* 966 F.Supp. 9, 11 (D.D.C. 1997).

Plaintiffs claim that litigation in *Evans* does not preclude equitable relief here. They rely primarily on the fact that the entire thrust of the *Evans* lawsuit is different from the instant litigation. Plaintiffs claim that the *"Evans* litigation was initiated to enjoin the District of Columbia to de-institutionalize Forest Haven, and provide habilitation to mentally retarded persons in community based environments." Pls.' Opp. at 7. In contrast, "this case arises out of an unconstitutional policy whereby city officials illegally consent to elective surgical procedures on mentally retarded citizens." *Id.*

Plaintiffs also contend that the claim is not barred by claim preclusion because, they assert, plaintiffs' claims could not have been brought in the prior action because plaintiffs' injuries were sustained after *Evans* was filed. Moreover, two of the three plaintiffs sustained injuries even after *judgment* was entered in the *Evans* litigation. That is, Jane Doe I's injury was not sustained until 1982, and Jane Doe II's injury was sustained in 1994, four and sixteen years, respectively, after the initial *Evans* consent decree was entered.

Based on the information presently before the court, the court concludes that defendants have failed to meet their burden of demonstrating that plaintiffs' allegations present the same "cause of action" as that presented in *Evans.*

To begin, the court agrees with plaintiffs that the "thrust" of the two lawsuits is different. The plaintiffs in *Evans* sought broad and comprehensive action-the closing of Forest Haven and general reform of the District of Columbia's care and treatment of the mentally retarded. Here, in contrast, plaintiffs seek monetary relief and ask the court to enjoin one discrete District policy. These differences point to different motivations animating the two disputes.

The court is also persuaded that the question of medical consent was not settled-or even addressed-by the *Evans* court. The final judgment in *Evans,* the 1978 consent decree, did discuss some medical issues. The decree enjoined defendants from administering "excessive or unnecessary medications to class members" and "[u]sing medication as punishment." *See Evans* 459 F.Supp. at 489. The decree further stated: "A program of medical, dental and health related services for class members which provides accessibility, quality and continuity of care for physical illness or injury is required.... All injuries or illnesses which require the attention of a physician shall be immediately *reported* to the class member's parent or guardian." *Id.* (emphasis added). Importantly, then, while the decree provided for familial notification, by its plain terms, the decree did not directly address the question of medical *consent. Cf., Dart Drug Corp. v. Schering Corp.,* 320 F.2d 745, 749 (D.C.Cir.1963) (noting that consent decrees "are to be read within their four corners" and "are binding only to the extent to which they go").[7]

---

7. Defendants' main contention is that medical consent was and still "is an actual, live issue in *Evans."* Defs.' Mot. at 5. In support of this assertion, defendants cite to deposition testimony and other statements by witnesses. Defs.' Mem. at 5. Such evidence may not be

Moreover, even assuming that medical consent was litigated in *Evans*, a fact in much dispute, the conduct here is temporally distinct from any matter addressed by the *Evans* judgment. Jane Doe I and II's claims arose years after the initial consent judgment was entered. This is important for two reasons.

First, the D.C. Circuit has noted that courts, in determining whether acts fall within the same "cause of action," should look to the "timing" of these occurrences. The more distant in time, the more likely it is that the claims constitute two causes of action.

■ Second, and far more important, courts have held that claim preclusion does not extend to claims that did not arise until after the original pleading was filed in the earlier litigation. That is, while a previous judgment "precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75

S.Ct. 865, 99 L.Ed. 1122 (1955); *accord Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Manning v. City of Auburn*, 953 F.2d 1355, 1359–60 (11th Cir.1992) (finding that claim preclusion extends to claims in existence at the time of filing of the original complaint and any additional claims actually asserted by supplemental pleading); *Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 644–46 (7th Cir.1986) (finding that a second action was barred by claim preclusion except as to matters that occurred after the filing of the first action). This rule is equally applicable in the consent judgment context, unless the specific consent decree clearly provides otherwise. *See, e.g., Joshi v. Prof'l Health Services, Inc.*, 817 F.2d 877, 880–81 (D.C.Cir.1987) (although a "consent order bars claims ... arising prior to its entry, it cannot preclude litigation of claims based on [conduct] effected subsequent to that date"). Finally, the rule applies even if the defendant is engaged in a "continuing course of conduct" that is "related to conduct complained of in an earlier suit." *Green v.*

considered on a judgment on the pleadings and thus has been excluded from the court's consideration. *See* Fed.R.Civ.P. 12(c). Another piece of evidence cited by defendants, the "2001 Plan for Compliance and Conclusion of *Evans v. Williams*" (Defs.' Ex. 1., hereafter "Plan"), as a public document, was fully considered by the court.

Upon careful review of this Plan, the court finds support for defendants' claim that consent for non-emergency medical care is an issue that has been addressed and discussed by those seeking to comply with *Evans'* broad dictates. The 2001 Plan clearly touches upon issues related to medical notification and consent. Specifically, it requires that the MRDDA inform an incapacitated individual's guardian or legal representative when the individual becomes seriously ill or seriously injured. In addition, the Plan provides that the incapacitated individual's guardian or legal representative is entitled to make decisions regarding the individual's dental and medical

health. *See* Plan at 15 (requiring the individualized service plan of each MRDDA consumer with decision-making incapacity to "provide for decision-making by a guardian or other appropriate surrogate decision-maker").

While this Plan does address pertinent matters, its importance is limited, however, because the Plan was "not intended to be an enforceable document." Plan at 10. Its stated purpose is to "ensure the protection of the [*Evans*] class' continuing interest in adequate habilitation." Plan at 5. The Plan may well be prophylactic, extending beyond what was required by any *Evans* court. While defendants' compliance with the Plan may perhaps militate against the propriety of granting plaintiffs' request for injunctive relief down the road, the Plan itself cannot be said to extinguish plaintiffs' claims or conclusively show that the issue of medical consent was litigated in *Evans*.

*Illinois Dept. of Transp.*, 609 F.Supp. 1021, 1024 (N.D.Ill.1985).

*Crowe v. Leeke*, 550 F.2d 184 (4th Cir. 1977), is particularly instructive. In *Crowe*, prison inmates brought an action against prison officials challenging the constitutionality of prison mail procedures which allowed correspondence from attorneys to be opened and inspected outside the presence of the inmate-addressee. *Crowe*, 550 F.2d at 185. The district court initially dismissed the action, ruling that a prior class action on behalf of all prisoners, which challenged the constitutionality of mail regulations generally, precluded this more specific, subsequent lawsuit. The Fourth Circuit disagreed. *Id.* The *Crowe* court found that a prior class action did not bar an inmate from bringing a subsequent challenge, so long as the inmate was challenging acts which occurred after the judgment in the first suit was entered. This was true, moreover, even when the inmate bringing the second action was a member of the previous class. The court found:

> the [prior] judgment does not bar the present action under principles of res judicata. Although that judgment precludes plaintiffs from relitigating the constitutionality of defendants' acts occurring before [the day the first judgment was issued], res judicata does not

prevent them from challenging acts occurring after [that date].

*Id.* at 187. The court therefore concluded that claim preclusion "has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action." *Id.*

Although this question is a very difficult one, after giving plaintiffs the benefit of all favorable inferences, as the court must under Rule 12(c), the court finds that defendants have not demonstrated that this case and *Evans* arise from the same "cause of action."[8] Defendants have not shown that plaintiffs' claim was, or could have been, brought before the *Evans* court.

## 2. Identity of Parties

Application of claim preclusion requires an identity of parties. Defendants state that "700 members of the putative class in this case are members of the *Evans* class." Defs.' Mem. at 1. Plaintiffs claim that there "is no basis for this allegation in the pleadings, or in any facts before this court." Pls.' Opp. 5. Defendants also assert that plaintiffs Jane Does I, II, and III are *Evans* class members. Defs.' Mem. at 1 n. 2. In regard to this claim, plaintiffs, once again, provide that "this is an unsupported hearsay assertion, not properly be-

---

**8.** Defendants claim that "courts have held that where a class member has a currently-available equitable remedy in a class action, he may not institute an independent action for injunctive relief." Defs.' Mem. at 6. Defendants further provide: "Challenges relating to a consent decree are not properly brought in a separate case. Proceedings to enforce a civil decree are tried as a part of the main cause." *Id.* (quoting *Saldivar v. Cadena*, 622 F.Supp. 949, 962 (W.D.Wis.1985)). While defendants cite *Saldivar* for this proposition, *Saldivar* relates to an action where the plaintiff's claim was that the defendants were violating a previously-executed consent de-

cree. No such claim is made here. *Harrelson v. Elmore County*, 859 F.Supp. 1465, 1469 (M.D.Ala.1994), also cited by defendants, is also distinguishable. In that case, like *Saldivar*, the plaintiff sued in a separate action, claiming that the defendant was violating their previously-executed consent decree. In that case, the court held that the defendant's alleged violation of a consent decree should be brought as a contempt action before the court that entered the initial decree. Because, here, plaintiffs' claim is not that defendants are violating the *Evans* consent decree, defendants' authority is inapposite.

fore this court." Pls.' Opp. at 5. Plaintiffs concede that "there may indeed be some overlap between the putative class here and the Evans class" but plaintiffs nevertheless insist that "the two classes are not identical." *Id.*

Though plaintiffs never specifically state that Jane Does I, II, and III are not *Evans* class members, this matter appears unsettled. It is also unclear, assuming *arguendo* that a class will be certified here, to what extent there will be overlap between the class members in *Evans* and class members in the instant action. The court expects that these easy-to-answer questions will be resolved in the near term. At this time, however, the burden of showing an identity of the parties is on defendants, and, with factual issues unresolved, the court cannot find this burden has been met. *See generally Bennett v. State Farm Fire & Cas. Ins. Co.*, 890 F.Supp. 440, 441–42 (E.D.Pa.1995) (denying the defendant's motion to dismiss because the defendant had not demonstrated that the plaintiff was a member of the previously-adjudicated class action).

### 3. Final Judgment

■ While it does not alter the court's ultimate resolution of defendants' motion, the court does find that defendants have demonstrated that there was a final judgment in the *Evans* litigation. Plaintiffs claim that there has been no final judgment on the *Evans* litigation because the case is ongoing and the "final judgment" that was issued in 1978 has been highly contested and subject to great revision. The contested nature of that "final judg-

ment," according to plaintiffs, is best evidenced by a statement by Judge Harris, in which he stated: "On June 14, 1978, Judge Pratt issued a Final Judgment and Order, which unfortunately proved to be about as final as peace in the Balkans." *Evans v. Williams*, 139 F.Supp.2d 79, 84 (D.D.C. 2001). *See* Pls.' Reply at 6.

■ Plaintiffs' argument is without merit. "Consent decrees generally are treated as final judgments on the merits and accorded *res judicata* effect." *I.A.M.*, 723 F.2d at 947; *accord United States v. Swift & Co.*, 286 U.S. 106, 112, 52 S.Ct. 460, 76 L.Ed. 999 (1932) ("a decree entered upon consent ... [is] a definitive adjudication setting [the] controversy at rest"); *O'Cedar Corp. v. F.W. Woolworth Co.*, 66 F.2d 363, 366 (7th Cir.1933) ("a decree of a court ... rendered by consent of the parties ... is as binding and conclusive between the parties and their privies as if the suit had been an adversary one"). Thus, defendants have adequately satisfied this necessary factor.

In sum, at the present time, many questions remain. "The burden of establishing preclusion is placed on the party claiming it, and reasonable doubts will be resolved against an asserted preclusion." *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. 1251, 1271 (D.P.R.1982) (citations omitted). Without more guidance, the court cannot find that defendants have carried their burden. The court therefore denies defendants' motion for partial judgment on the pleadings concerning plaintiffs' request for equitable relief, pursuant to Rule 12(c).[9]

---

9. In so finding, the court declines to reach the merits of plaintiffs' claim that "a 12(c) motion cannot be used to parse claims for relief or strike less than an entire count." Pls.' Opp. at 2. The court notes, however, that while it is well established that "a motion for partial judgment on the pleadings is appropriate,"

*VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 29 F.Supp.2d 1253, 1258 (D.Kan.1998), at least one court has held that "[p]artial judgment on the pleadings is not possible in federal pleading unless it disposes entirely of one or more counts of the complaint." *In re Amica, Inc.*, 130 B.R. 792, 796 (Bankr.N.D.Ill.

## C. Dismissal of Claims Against MRDDA

■ Defendants also ask the court to dismiss all claims against MRDDA because, as a District of Columbia entity, the MRDDA is not amenable to suit. In this regard, defendants are quite right. The law is clear that "agencies and departments within the District of Columbia government are not suable as separate entities." *Gales v. Dist. of Columbia*, 47 F.Supp.2d 43, 48 (D.D.C.1999) (citing *Fields v. Dist. of Columbia Dept. of Corrections*, 789 F.Supp. 20, 22 (D.D.C.1992)); *see also Arnold v. Moore*, 980 F.Supp. 28, 33 (D.D.C.1997) ("[g]overnmental agencies of the District of Columbia are not suable entities") (citing *Roberson v. Dist. of Columbia Bd. of Higher Ed.*, 359 A.2d 28, 31 n. 4 (D.C.App.1976); *Miller v. Spencer*, 330 A.2d 250, 251 n. 1 (D.C.App.1974)); *Jenkins v. Dist. of Columbia*, 1996 WL 440551, *1 n. 2 (D.D.C.1996). Accordingly, the MRDDA is *non sui juris*, and the court therefore lacks jurisdiction over it.

## III. CONCLUSION

Accepting as true all factual allegations and drawing all reasonable inferences in plaintiffs' favor, this court concludes that defendants' motion for partial judgment on the pleadings on the ground of claim preclusion is **DENIED** and defendants' motion to dismiss claims against MRDDA because that entity is not amenable to suit is **GRANTED**.

Accordingly, it is this 16th day of December, 2002, hereby:

**ORDERED,** that defendants' motion for partial judgment on the pleadings is **GRANTED** in part and **DENIED** in part.

---

1991). The *Amica* court reached this conclusion after considering the similarity between Rule 12(c) and Rule 56 and noting that many courts reject the granting of partial summary judgment on one claim. *See, e.g., Commonwealth Ins. Co. of New York v. O. Henry Tent and Awning Co.*, 266 F.2d 200, 201–02 (7th Cir.1959) (finding that courts cannot issue partial summary judgment to one claim); *Coffman v. Fed. Labs.*, 171 F.2d 94, 98 (3d Cir.1948) (internal quotations omitted) (finding that Rule 56 "does not contemplate a summary judgment for a portion of a single claim in suit. Neither does any other rule of the Rules of Civil Procedure so contemplate, as far as we are aware."); *Kendall McGaw Labs., Inc. v. Cmty. Mem'l Hosp.*, 125 F.R.D. 420, 421 (D.N.J.1989) ("Summary judgment may be had as to one claim among many, but it is well settled that neither subsection allows such a judgment as to one portion a claim."); *Bonda's Veevoederfabriek, Provimi, B.V. v. Provimi, Inc.*, 425 F.Supp. 1034, 1036 (E.D.Wis. 1976) ("Judgment may not be rendered on a portion of one claim."). Other courts have rejected *Amica's* conclusion, however. *See, e.g., Chi–Mil Corp. v. Grant Co.*, 70 F.R.D. 352, 357 (E.D.Wis.1976) ("judgment on the pleadings with respect to a part of a claim is implied by the parallel provision for partial summary judgment under Rule 56"). Because the court finds that defendants would not be entitled to partial judgment on the pleadings, assuming *arguendo* that such relief exists, the court need not wade into this contested water.